ALBERT L. TAVEGIA, also known as Albert Tavegia,
*Plaintiff and Respondent,*

vs.

J. R. BROMLEY, as State Highway Superintendent of
Wyoming.
*Defendant and Appellant.*

(No. 2448; February 21, 1950; 214 Pac. (2d) 975).

94

For plaintiff and respondent the cause was submitted on the brief of E. C. Raymond, Rodney M. Guthrie and Beatrice Raymond of Newcastle, Wyoming and oral argument by Mr. E. C. Raymond.

For defendant and appellant the cause was submitted on the brief of Norman B. Gray, Attorney General, Marion R. Smyser, Deputy Attorney General, and Harry A. Thompson, Assistant Attorney General all of Cheyenne, Wyoming and oral argument by Mr. Smyser.

## OPINION.

RINER, Chief Justice.

The District Court of Weston County by an order duly entered overruled a general demurrer to plaintiff's petition in a case wherein Albert L. Tavegia, also known as Albert Tavegia, was plaintiff and J. R. Bromley as State Highway Superintendent of Wyoming was defendant. By the order overruling the demurrer the defendant was "given thirty days from the date of this order in which to answer or otherwise plead" to the petition aforesaid. Defendant declined to avail himself of this permission but preferred

to stand upon his demurrer and plead no further. In consequence the court's judgment was rendered against him upon the issues of law thus raised. From that judgment this direct appeal proceeding to this court for a review thereof was prosecuted.

So much of plaintiff's petition as is necessary to be considered to enable us to dispose of this case properly will be now set forth either in substance or verbatim as follows: After alleging that he has never been convicted of any violation of the laws of the United States or this state, plaintiff avers that about December 16, 1947 Registration and Drivers license certificates and also vehicle license plates, giving detailed description thereof, were issued to him for his operation of a Chevrolet Pickup truck of the year 1946 model upon the highways of Wyoming since which date he has been and still is in possession of said registration plates, certificate and Chauffeurs license; that plaintiff is a farmer and rancher and that he "necessarily uses in his operation of his farm and ranch the above pickup and that he also uses the same for transporting his children and those of his neighbors to school at Osage, Wyoming"; that the defendant is the State Highway Superintendent of Wyoming and that under the Motor Vehicle Safety-Responsibility Act, Chapter 160 Laws of Wyoming, 1947 defendant was given sole authority to administer and enforce the provisions of that Act. That on September 18, 1948 when this truck carried said license plates and plaintiff was in possession of said Chauffeurs License, plaintiff was, about 4:30 p. m., driving said truck on Highway No. 18 with himself and two children, in the outskirts of Osage, Weston County, Wyoming; that plaintiff was traveling easterly on the right side of the road, and in order to reach the road leading to his home, he was compelled to make a left hand turn which he did after indicating by extending

his left arm out of the window of said vehicle so that all persons driving in the same direction he was would be advised that he was turning off the road; that his arm was first extended at least one hundred feet prior to making said turn and was "continually extended until such turn was made"; that one E. H. Burns who was driving in the rear of plaintiff turned from his part of the road and crossed over on the opposite side of said road and struck plaintiff's truck, the front wheels of which were entirely off the highway; that during all this time the sun was shining and there was nothing to obstruct the view of Burns who was driving an automobile with Colorado license plates; that said Burns was intoxicated and his collision with plaintiff was the result of reckless driving by Burns in an intoxicated condition;

"That the vehicle driven by this plaintiff was not materially injured but that the car driven by Burns was injured to some extent the exact damage being to this plaintiff unknown."

That after said accident the defendant herein claiming to act under said provisions of Chapter 160, Session Laws of Wyoming, 1947 served plaintiff by mail with a written notice, copy of which is attached to plaintiff's pleading marked "Exhibit A" and made a part thereof. This notice is verbatim as follows:

"WYOMING HIGHWAY DEPARTMENT

Wyoming Highway Patrol
Cheyenne

November 15, 1948

10 DAYS NOTICE TO FURNISH
PROOF OF FINANCIAL
RESPONSIBILITY

"Mr. Albert Tavegia

Osage, Wyoming

Our records indicate that on September 18, 1948, you were involved in a motor vehicle accident and have failed to furnish Proof of Financial Responsibility as provided by the Motor Vehicle Safety-Responsibility Act (Chapter 160, Session Laws of Wyoming, 1947).
You are hereby given notice it is required that your (1) Drivers License, (2) Motor Vehicle Registration Certificate and (3) Motor Vehicle License Plates be suspended and surrendered to this office, unless within ten (10) days from this date, you furnish Proof of Financial Responsibility, by compliancce with one of the following provisions of the law:

1. Deposit with the Superintendent security in a sum which shall be sufficcient in the judgment of the Superintendent ($275.00), to satisfy any judgment or judgments for damages resulting from such accident which may be recovered against you, or

2. You file satisfactory evidence with the Superintendent, (a) showing that you have been released from all liability for the accident, such evidence may be in the form of a sworn statement by the other party or parties involved in the accident which states in effect that they relieve you from all liability in connection with the accident, or (b) of a final adjudication or that a court has found you not liable for the accident, or (c) of a warrant for confession of judgment, or (d) that there has been executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, or

3. (a) A certificate of insurance from an insurance company, or (b) a surety bond from some surety company, or (c) a bond signed by at least two individuals who each own real estate within this State which real estate shall be scheduled in the bond approved by a court of record, or (d) a cash deposit in the sum of $11,000.00 or (e) a certificate of self insurance if you have more than twenty-five (25) motor vehicles reg-

istered in your name. Proofs of financial responsibility under (a) and (b) must be in the amounts of $5,000.00 because of bodily injury to or death of one person in any one accident; $10,000.00 because of bodily injury to or death of two or more persons in any one accident; $1,000.00 because of injury to or destruction of property of others in any one accident.

State Highway Superintendent,
By (Wm. R. Bradley),
Captain"

Plaintiff's petition then states that knowing he was the aggrieved party and being in no manner negligent or careless and not in any manner responsible for the accident aforesaid refused to comply with the requirements of this notice for the reason that he would be put to great expense and difficulty and same would "be in no manner a determination of the cause of the accident"; that plaintiff had no insurance upon the truck he was driving, and knowing himself to be entirely blameless "refused to deposit either of the sums of money or to surrender his license plates or drivers license." That thereafter on December 8, 1948, plaintiff received another written notice marked "Exhibit B" which is made a part of the said petition and reads as follows:

"WYOMING HIGHWAY DEPARTMENT #2167

Wyoming Highway Patrol
Cheyenne

November 30, 1948

NOTICE OF SUSPENSION
OF
DRIVERS LICENSE
MOTOR VEHICLE
REGISTRATION
CERTIFICATE
AND
LICENSE PLATES

"Mr. Albert Tavegia

Osage, Wyoming

"You are hereby notified that your (1) Drivers License, (2) Motor Vehicle Registration Certificate and (3) Motor Vehicle License Plates are suspended as a result of a motor vehicle accident and because of failure to furnish proof of Financial Responsibility, as provided by the Motor Vehicle Responsibility Act (Chapter 160, Session Laws of Wyoming, 1947), and it is now required that they be surrendered to this office immediately.

The law also provides, in part, as follows:

'Any person willfully failing to return license or registration as required in Section 31 shall be fined not more than $500.00 or imprisoned not to exceed thirty days, or both'.

'Any person whose license or registration or non-resident's operating privilege has been suspended or revoked under this Act and who, during such suspension or revocation drives any motor vehicle upon any highways or knowingly permits any motor vehicle owned by such person to be operated by another upon any highway except as permitted under this Act, shall be fined not more than $500.00 or imprisoned not exceeding six months, or both'.

'If an owner's registration has been suspended hereunder, such registration shall not be transferred nor the motor vehicle in respect of which such registration was issued registered in any other name until the Superintendent is satisfied that such transfer or registration is proposed in good faith and not for the purpose or with the effect of defeating the purposes of this Act. Nothing in this Section shall be held to apply to or affect the registration of any motor vehicle sold by a person, who pursuant to the terms or conditions of any written instrument giving a right of possession, has exercised such right and has repossessed such motor vehicle from a person whose registration has been suspended under the provisions of this Act.'

State Highway Superintendent,
By (Wm. R. Bradley)
Captain.

104

Drivers License  No. 92161 Wyoming

Registration No.       21-T-9 Wyoming
                       Secretary of State
                       Cheyenne, Wyoming

Copy to:               Patrol Office
                       State Capitol
                       Cheyenne, Wyoming"

Plaintiff also alleges that defendant in issuing said orders and notices asserts he has the right so to do under Sections 2 to 31 inclusive of said Act, Chapter 160, Laws of Wyoming, 1947 and generally under all of its provisions; that the same session of the Wyoming State Legislature which enacted Chapter 160 aforesaid passed an act known as Chapter 162, Laws of Wyoming, 1947 by which the Wyoming Highway Department was given certain authority with reference to drivers and chauffeurs licenses issued by the State of Wyoming which Act provides a method by which an aggrieved person holding such license may appeal to the District Court of his residence; that defendant has ignored such statute and is apparently acting wholly under the provisions of Chapter 160 aforesaid; that the provisions of these two chapters are conflicting and it is wholly impossible for the holder of license plates or registration certificate to determine which act of the legislature gives the right of commencing an action to determine the validity of the orders of said Highway Superintendent; that the defendant is attempting to commence a criminal action against plaintiff who is guilty of no wrong in the operation of his truck and will be put to heavy expense in defending such criminal action without any justifiable reason; that attached to plaintiff's petition marked "Exhibit C" and made a part of said pleading is an affidavit of plaintiff "showing the facts in con-

nection with said collision". Omitting formal parts, signature and setting forth only those portions which have not in the body of plaintiff's petition been above set forth in substance or verbatim, this affidavit of plaintiff recites somewhat more in detail:

"That his pickup was not damaged but he did stop immediately to see if any one in the other car was hurt. Burns, the only man in the car, got out. He was not hurt. We had very little conversation at that time. Burns just got out and looked said a few words and left in a moment. About his only conversation was to my little girl who was crying and he said 'I hope I didn't hurt you little girl'. I did however ask him at that time if he had not seen me hold out my hand for this turn and he said, 'Yes but I thought you were waving at me to go on by'. Burns did not ask me for any damages at that time and did not mention my being at fault. He was in very much of a hurry to get away. I did not have time to look at his car. He was intoxicated or under the influence of liquor at that time. "I saw Burns later at the plant where he worked. This was after the Highway Superintendent had asked me to make a report of this accident. I had not made any report of this accident because my car had suffered no damage. Burns had made no complaint to me about any damages and I had never had any opportunity to see if he or his car had suffered damages in the sum of $50.00 or of any sum in fact. I do not know if his car was damaged in the sum of $50.00 by this collision yet. However on receiving notice from the said Superintendent I did make a report and in order to get some data on the report I went to see Burns at the plant where he was working. I asked Burns at that time if he claimed any damages from me and he said, 'I do not want any damages from you. My insurance company will look after my loss'. He then promised me he would sign a release for me at C. V. Smith's store. He did not however ever come in to sign this release.

"Burns was not working the day of the wreck or collision. He was driving down from Upton to get some other men working at the plant. He left the

scene in very much of a hurry. Had he waited a very short time several people would have been there and seen him. He did not even straighten out a fender which was dragging on a tire when he left. While I was talking to him at the time of the accident I said to him 'you are to blame for this'. He did not deny this but did say that 'every time you hit a truck you get the worst of it.' "

The remainder of plaintiff's petition charges that Chapter 160 aforesaid under which defendant undertook to act is unconstitutional and void in certain stated particulars. We find is unnecessary to set forth these portions of plaintiff's pleading for the reason that "it is a uniform rule that courts do not pass upon the constitutionality of a statute unless the necessity therefor in the case pending clearly appears" and that "when a case can be completely and effectively disposed of without passing on a constitutional question, the courts will not pass upon such matter". State vs. Kelley et al., 17 Wyo. 335, 98 Pac. 886, 889; State ex rel. Keefe et al. vs. Jones, Mayor, 62 Wyo. 61, 161 Pac. 2d 135; Sheridan County Power District et al. vs. Chicago B. & Q. R. Co. et al., 61 Wyo. 365, 157 Pac. 2d 997; I Cooley's Constitutional Limitations (8th Ed.) 388. We think this case falls within these rules.

The prayer of plaintiff's petition is substantially that the court stay all proceedings of the defendant in this matter pending final hearing and disposition of the case.

Plaintiff's petition was filed in the District Court aforesaid on December 15, 1948. On the following day, December 16, 1948, on plaintiff's motion made, that court entered its order in the case directing that:

"all proceedings, civil and criminal, be stayed and that all orders of the said defendant herein issued be

stayed and not be operative pending further orders of this Court, and

"Let a copy hereof be served upon this defendant within 10 days of the signing thereof."

To this petition on December 27, 1948 as hereinabove stated the defendant, without further action as to plaintiff's petition, demurred on the general ground "that the petition does not state facts sufficient to constitute a cause of action." As recited above, the questions of law thus raised were argued and determined adversely to the defendant. What followed thereafter has already been set forth in detail.

The judgment appealed from omitting caption and signature is in the following form:

"Now, to-wit, on this 4 day of April, 1949, this matter coming on to be heard and it appearing to the Court that on the 29th day of February, 1949, that this Court overruled the demurrer of the defendant to the plaintiff's petition and granted the defendant thirty days within which to answer or otherwise plead to said petition and the defendant having announced his desire to stand upon his demurrer and refused to further plead in this cause it is

"ORDERED, ADJUDGED AND DECREED: that the defendant be and he is hereby restrained from in any manner interfering with the use of the highways of this state by the plaintiff for any of the causes as pleaded in the plaintiff's petition; that the plaintiff be and he is hereby restored to his use of the said highways and the right to use any and all motor vehicles owned by him and properly licensed as required by the laws of the State of Wyoming, and also to the use of any and all Driver's or Chauffeur's licenses that have been theretofore or that may be hereafter issued to him; and that the defendant be restrained from further prosecuting any criminal action or commencing any criminal action in this Court against the plain-

tiff based upon the charges or facts pleaded in said petition; and for his costs and disbursements herein expended to be taxed by the Clerk of this Court.

"To all of which order and judgment the defendant duly excepts which exception is by the Court allowed.
"Dated this 4th day of April, 1949."

The statute involved in this litigation as appears from plaintiff's petition is Chapter 160, Laws of Wyoming, 1947 and embraces altogether some forty-one sections. By its provisions (Section 32 (a) and (b) which are quoted in the two paragraphs preceding the last one in plaintiff's "Exhibit B" aforesaid and also subdivision (d) of said section which reads: "Any person who shall violate any provision of this Act for which no penalty is otherwise provided shall be fined not more than $500.00 or imprisoned not more than ninety days, or both".) it is seen that the statute is penal in character and the rule applies:

"It has long been a well settled general rule that penal statutes are subject to a strict construction. More accurately, it may be said that such laws are to be interpreted strictly against the state and liberally in favor of the accused. The rule is founded on the tenderness of the law for the rights of individuals; its object is to establish a certain rule, by conformity to which mankind would be safe, and the discretion of the court limited." 50 Am. Jur. 430-431, Section 407.

It is asserted on behalf of the appellant that:

"the petition which the respondent filed in the District Court shows on its face that the action taken by the appellant was according to law and that the respondent is at fault."

With this contention we can not agree. We think, as the District Court of Weston County evidently did, that the contrary to this contention appears upon the face of the petition before us when viewed in the light of certain provisions of the statute involved. Those pro-

visions are: That part of subdivision (a) of Section 4 reading:

"The operator of every motor vehicle which is in any manner involved in an accident within this State, in which any person is killed or injured or in which damage to the property of any one person, including himself, in excess of $50.00 is sustained, shall immediately report the matter in writing to the Superintendent." That part of Section 5 reading:

"Within 60 days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death, or damage to the property of any one person in excess of $50, the Superintendent shall suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, and if such operator is a nonresident the privilege of operating a motor vehicle within this State, and if such owner is a nonresident the privilege of the use within this state of any motor vehicle owned by him, unless such operator or owner or both shall deposit security in a sum which shall be sufficient in the judgment of the Superintendent to satisfy any judgment or judgments for damages resulting from such accident which may be recovered against such operator or owner; provided notice of such suspension shall be sent by the Superintendent to such operator and owner not less than 10 days prior to the effective date of such suspension and shall state the amount required as security."

That part of Section 6 which reads:

"The requirements as to security and suspension in Section 5 shall not apply:

\* \* \* \*

"If, prior to the date that the Superintendent would otherwise suspend license and registration or non-resident's operating privilege under Section 5, there shall be filed with the Superintendent evidence satisfactory to him that the person who would otherwise have to file security has been released from liability or been finally adjudicated not to be liable or has executed

a warrant for confession of judgment, payable when and in such installments as the parties have agreed to, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments, with respect to all claims for injuries or damages resulting from the accident."

And also Section 2 which reads:

"The Superintendent shall administer and enforce the provisions of this Act and may make rules and regulations necessary for its administration.

"Any person aggrieved by an order or act of the Superintendent, under the provisions of Sections 4, 5, 6, 7, 8, 9, 10 and 11 of this Act, may, within ten days after notice thereof, file a petition in the District Court of the County of his residence unless he be a non-resident in which case such petition shall be filed in the County in which the accident occurred, for a *review thereof;* but the filing of such a petition shall not suspend the order or act unless a stay thereof shall be allowed by a judge of said Court pending final determination of the *review. The court shall summarily hear the petition and may make any appropriate order or decree."* (Italics supplied.)

By Section 1 of the Act the word "Superintendent" is stated to mean "the Superintendent of the State Highway Department of this State". With the above quoted Section 2 as to procedure there may be properly considered also Section 37 of the Act which provides: "Nothing in this Act shall be construed as preventing the plaintiff in any action at law from relying for relief upon the other processes provided by law."

As we read the plaintiff's petition with its attached and incorporated papers, the defendant's demurrer admits among other salient facts, the following: That plaintiff when he undertook to drive his truck off the highway by a left turn made the proper lawful signal so to do and in ample time—also as provided by law

—to warn Burns, the driver of the following automobile, concerning plaintiff's proposed action of turning to the left and leaving the highway (see W. C. S. 1945, Sections 60-511 to 60-513 inclusive); that notwithstanding such warning, with plaintiff's vehicle in clear view, Burns turned to the left side of the highway and his car struck plaintiff's vehicle when the latter's two front wheels were "entirely off the highway" and when Burns' car was on the wrong side of the road (Section 60-505, W. C. S. 1945); that when Burns' car struck plaintiff's truck Burns was driving his car while intoxicated or under the influence of liquor and in violation of law (See Section 60-414 W. C. S. 1945); that plaintiff's truck sustained no damage at all and that Burns' car was injured to some extent but how much plaintiff did not and does not know; that there was no "bodily injury or death" as a result of such collision; that after receipt of plaintiff's "Exhibit A" aforesaid plaintiff made a report to the Highway Superintendent; that before that report was made, Burns responded to an inquiry made by plaintiff of Burns at the place where the latter was working, that he (Burns) did not want any damages from plaintiff and agreed to sign a release for plaintiff but did not do so; that when Burns was charged by plaintiff with being to blame for the accident he did not deny it. The date does not appear in this record when plaintiff made his report to the Highway Superintendent. It does not appear either that Burns made any report whatsoever to that official.

When these admissions are viewed in their entirety and in connection with the law governing the operation of motor vehicles as we have referred to it hereinabove we are unable to see that plaintiff was at fault but are obliged to reach the conclusion that he was not.

We are not at all aided by the communications from the Superintendent to plaintiff under date of November 15 and November 30, 1948 respectively. The notice of date November 15 merely stated that "our records indicate that on September 18, 1948 you (the plaintiff) were involved in a motor vehicle accident and have failed to furnish proof of financial responsibility as provided by Chapter 160, Laws of Wyoming, 1948"; that plaintiff's drivers license, motor registration certificate and his motor vehicle license plates should be surrendered to the Superintendent unless plaintiff deposited with that official security in a sum which would "be sufficient in the judgment of the Superintendent ($275.00) to satisfy any judgment for damages resulting from such accident which might be recovered against" plaintiff or show by a "Sworn statement by the other party or parties involved in the accident which states in effect that they relieve you (plaintiff) from all liability in connection with the accident" or comply with other alternative and stated excusive provisions of the statute.

It is not disclosed by said notice that the Highway Superintendent had received any report from anyone claiming damages to property of any one person in excess of $50.00 or in any amount whatsoever, for that matter. How the Highway Superintendent arrived at the sum mentioned in the notice "Exhibit A", viz., $275.00 it is impossible to tell. He certainly did not obtain it from the plaintiff's report of the accident, in view of what plaintiff's petition sets forth to the effect that even at the time the petition was filed plaintiff did not know how much damage Burns' car had suffered. It is plain also that no one was at the scene of the accident when it happened except plaintiff, his small children and the defendant Burns. The latter left immediately after the collision occurred.

Recurring again to the statements in the notice given plaintiff by the Superintendent and of date November 15, 1948 which recites that in lieu of the named security amount plaintiff may furnish a sworn statement by the other party involved in the accident which states that he relieves plaintiff from all liability in connection with the accident, it will be noted the statute briefly says, as before set forth, (Section 6, Subdivision 4, supra) that "there shall be filed with the Superintendent evidence satisfactory to him that the person who would otherwise have to file security has been released from liability". So far as we can tell from the petition and incorporated papers accompanying it, the only evidence the Superintendent had before him on that point was the report of plaintiff to the Superintendent that Burns had told plaintiff that he (Burns) did not want any damages from plaintiff. This information plaintiff says in his affidavit supra was part of the data obtained for his report to the Highway Superintendent.

In brief the notice "Exhibit A" sent to plaintiff simply informed the latter that the Superintendent acted merely upon his *records*, that on a named date plaintiff was "involved in a motor vehicle accident" and that no proof of financial responsibility has been filed with that official. The statute requires more than this, and properly so, when the Superintendent is undertaking to establish a legal right to abridge another's privileges which have been granted the latter by law. It does not permit the Superintendent to act at all unless the accident "resulted in bodily injury or death or damage to the property of any one person in excess of $50.00" (excerpt from Section 5, supra). One or the other of these facts should affirmatively appear by the receipt of a report to that effect as the statute points out. It does not appear here.

In the State of New York where a statute then was operative which so far as the principle involved was substantially like the above quoted portion of Section 5 of Chapter 160 supra, the case of Steinberg vs. Mealey, Commissioner of Motor Vehicles of that state, 263 App. Div. 479, 33 N. Y. S. 2d 650, arose. The statute there at that time read as quoted by the court: " '94-b. Failure to satisfy judgments; revocation of licenses and security. The operator's or chauffeur's license and all of the registration certificates of any person, in the event of his failure within fifteen days thereafter to satisfy every judgment *in excess of one hundred dollars* which shall have become final by expiration without appeal, of the time within which appeal might have been perfected or by final affirmance on appeal, rendered against him by a court of competent jurisdiction in this state, or in any other state or the District of Columbia, or of any district court of the United States, or by a court of competent jurisdiction in any province of the Dominion of Canada, for damages on account of personal injury, including death, or damages to property, * * *' (Italics ours)".

It appeared in that case that a judgment against the operator of a motor car, one Steinberg, had been secured by the other party to the collision, which involved two motor cars, for damages in the amount of $100 together with $15 costs resulting in a total recovery for plaintiff of $115. This judgment was not at first satisfied and the Commissioner suspended Steinberg's operator's license because of his failure "to satisfy the final judgment of a court in compliance with Section 94-b of the Vehicle and Traffic Law". Steinberg then made application to the Supreme Court of Albany County New York for an order "reviewing and annulling the determination made" by the Commissioner in suspending Steinberg's license. Such an order was entered by that court, but upon appeal to the Appellate Division of the Supreme Court the order below was reversed and the Commissioner's order

confirmed. The majority of the court, three judges, so held. This ruling of the Appellate Division was subsequently upheld. See 296 N. Y. 614, 68 N. E. 2d 887 where an appeal to the Court of Appeals was dismissed. The minority of two judges in the Appellate Division, however, dissented. The point on which the court disagreed was whether the fifteen dollars costs was a part of the judgment and so authorized the suspension of the Steinberg license.

But the entire court evidently agreed that the Commissioner could not act to suspend the Steinberg license unless the judgment against the latter was "in excess of $100.00" for we find in the majority opinion the statement:

"As amended the statute applies to 'every judgment in excess of one hundred dollars'. This language is so plain that it cannot be misunderstood. The legislative intent was to authorize the suspension of a license *in the event of failure to satisfy such a judgment*. But, it is said, that in construing this statute we must disregard the item of costs. No authority is cited for such an assertion. It is elementary that costs, when authorized, are part of the judgment. A judgment consists not of the items of damage alone but costs are likewise included. A judgment is the law's last word in a judicial controversy. Its purpose is to compel payment of a debt with costs, or to enforce some other command.

"At common law, costs were unknown, were not recoverable and were not adjudged in the judgment of the case. The right to recover costs exists only by virtue of statutory authority. Common-law courts have no inherent power to award costs.

"Since liability for costs generally is a legal consequence to the entry of a judgment, a court may, when authorized as in this case, render a judgment for costs as part of the general judgment and as an incident thereto. Even a judgment of dismissal usually car-

ries with it the costs of the action and such a judgment will authorize the execution and sale of the property of the person liable therefor normally subject to execution for judgments.

"We think that there is no merit in the contention that costs, when allowed, are not an essential part of a judgment. The judgment against petitioner was clearly one in excess of $100 for the nonpayment of which within the statutory time the commissioner was not only authorized to suspend his license but was required to do so." (Italics supplied).

In the minority opinion it is said:

"It is apparent from the foregoing language of the statute that the paramount issue in this appeal is whether or not the City Court judgment is a judgment 'in excess of One Hundred ($100.00) Dollars'. If it is not, the Commissioner has no power to suspend the petitioner's license."

In the case at bar appellant evidently agrees that in order to have authority to act in the matter as he did it must appear that the "damage to the property of any one person" must be "in excess of $50.00", for he says in his brief that by reason of the fact that plaintiff alleges that "Burns' vehicle was injured to some extent" and then sets out the Superintendent's notice "informing him (plaintiff) to make a deposit of $275.00, it sufficiently appears upon the face of the petition that the damage to Burns' vehicle was in excess of $50.00". But as above indicated so far as this record goes there was nothing in the hands of the Superintendent which invoked his power to proceed under the statute. So far as shown here there was nothing the matter with Burns' car after the accident except perhaps a fender dragging on a tire and even that did not prevent him from leaving the scene of the accident immediately. Such an injury was obviously of small account. There is nothing in plain-

tiff's "Exhibit B" which aids the statement which we have reviewed in plaintiff's "Exhibit A". It is merely a notice of suspension of plaintiff's license and a direction to him to surrender same together with his registration certificate and license plates and specifically directs his attention to certain penal provisions of the law. It with "Exhibit A" supplies the order and act of the Highway Superintendent which enabled plaintiff to invoke Section 2 (b) to which we now presently refer.

But as we understand the matter it was argued on behalf of appellant that the District Court has no authority to act as it did; that it could not pass upon the merits of either plaintiff's petition or the Highway Superintendent's action, and that plaintiff was required to bring another action to determine who was at fault and wherein. We are unable to see why this is so. An examination of Section 2 (b) and Section 37 of the statute whose language we have quoted above shows that when the Superintendent issues an order or does some act which aggrieves "any person" the latter within ten days after notice thereof may file a petition in the District Court of his residence *"for a review thereof"*. The section subdivision mentioned authorizes the court to direct that the action and order of the Superintendent shall be stayed "pending final determination of the *review*". It is the duty of the court to "summarily hear the petition" and "make *any appropriate* order or decree". Such language hardly demonstrates that the power of the District Court was intended by the legislature to be limited in its disposition of the "review" of the matter.

It is said that the determination made in this case is not binding on Burns. That, of course, is true inasmuch as he was not made a party. He could have

been made such (Section 3-621 W. C. S. 1945). The court gave appellant thirty days in which to file an answer to plaintiff's petition. Appellant could in such a pleading have stated not only any other facts which furnished authority for his actions in the premises if any he had, but he could have requested that Burns be made a party to the proceeding. He did not do so. He chose to have the case determined without the appearance of Burns and consequently stood upon his demurrer with the result that judgment went against him.

In Heart vs. Fletcher, 53 N. Y. S. 2d 369, a case cited by appellant we find it stated that:

"Counsel for petitioner in his brief asserts that section 94-e of the Vehicle and Traffic Law gives the commissioner of motor vehicles 'power to deprive a citizen of property, or rights in property, and it also gives the commissioner power to render judgment, i. e. assessing damages in an amount up to five thousand dollars'. Such is not the fact. The commissioner does not, nor may he, fix or finally determine the damages. That determination is left to the court in a subsequent action where the petitioner may appear and submit his proofs. Neither is the amount to be deposited by the petitioner as a protection to the injured party in this case subject to the sole discretion or whim of the commissioner. The amount of deposit first determined by him is subject to review as provided by subdivision (d) of section 94 of the Vehicle and Traffic Law (compare Section 2 (b) of the Wyoming statute, supra) which reads: 'Any person aggrieved by an order or act of the commissioner under this section or under provisions of this article, may maintain a proceeding under article seventy-eight of the civil practice act but the commencement of such a proceeding shall not suspend the order or act unless a stay thereof shall be allowed by said court pending final determination of the review.' Pursuant to these provisions petitioner is now having his day in court."

In connection with the quoted provision, subdivision (d) of Section 94 of the State of New York's Vehicle and Traffic Law in order to fairly understand the excerpt from the court's opinion given above we shall also quote the pertinent portion of Section 94-e, Subdivision (a) which is likewise supplied in the court's opinion as follows:

"Not less than ten days nor more than sixty days after receipt by him of the report or notice of an accident which has resulted in bodily injury or death, or in damage to the property of any one person in excess of twenty-five dollars, the commissioner shall forthwith suspend the license of any person operating, and the registration certificates and registration plates of any person owning, a motor vehicle in any manner involved in such accident unless and until such operator (or chauffeur) or owner or both shall have previously furnished or immediately furnishes security sufficient in the judgment of the commissioner to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such owner or operator (or chauffeur) by or on behalf of any aggrieved person or his legal representative, and unless and until such owner or operator (or chauffeur) or both shall immediately furnish and thereafter maintain proof of financial responsibility in the future."

It will be observed that the material last above excerpted is quite like, in many respects, our Section 5 of Chapter 160 supra and subsection (d) of the New York law is very like our Section "2 (b)" supra. It would seem, though, that the section of the Wyoming law last mentioned is much more specific and broader in its scope than the New York statute on the point. As detailed by the court the accident involved in the Heart litigation was the result of a collision between the bicycle of a ten year old boy and the right rear fender of Heart's automobile. The commissioner had received a report from the boy's physician and also

from the car owner himself. It appeared from both reports that personal injury to the boy had ensued, as a result of the accident. The court reviewed the claim of Heart that the security required by the commissioner to be deposited with the latter was excessive. The court's ruling was adverse to this contention. The important point to be noted, however, in this connection was the fact that the court reviewed the commissioner's action upon its merits in the premises. The District Court of Weston County has done just that here so far as it could be done in the situation in which the case stood before it.

Enough has been said herein to indicate that we think the District Court ruled correctly in the judgment under review and why. It follows that that judgment should be affirmed.

*Affirmed.*

KIMBALL, J. and BLUME, J. concur.