COUNTY COMMISSIONERS OF THE COUNTY OF LARAMIE v. COUNTY COMMISSIONERS OF THE COUNTY OF ALBANY AND COUNTY COMMISSIONERS OF THE COUNTY OF CARBON.

*CONTRIBUTION—COUNTY LIABILITIES.—The rule is well established, that where a county has been divided by an act of the legislature, one portion thereof retaining the former name, county seat, buildings and organization, and all county property, that such county is responsible for the entire indebtedness of the former county at the time of such division, and that an action will not lie against the new counties for contributions, unless special provision is made therefor by the legislature in the act itself.

IDEM.—Where the legislature of Wyoming territory organized two new counties, and included within their limits a part of the territory of an exist-

—————————————

*Affirmed by the Supreme Court of the United States : See 2 Otto R. 307.

ing county, but made no provision for apportioning debts or liabilities: *Held*, that the old county, being solely responsible for the debts and liabilities it had previously incurred, had, on discharging them, no claim upon the new counties for contribution.

APPEAL from the judgment and decree of the First Judicial District for Laramie County.

An act was passed by the legislative assembly of the territory of Dakotah, and approved January 9, 1867, by the governor of said territory, to create and organize the county of Laramie, and subsequently said legislative assembly passed an act to reorganize said county of Laramie, which act was approved by the governor of Dakotah on the third day of January, 1868. Said county, as reorganized, comprised that portion of said territory which now forms the counties of Laramie, Albany and Carbon, in the territory of Wyoming. By the last-named act the city of Cheyenne, in the present county of Laramie, was designated as the county seat. At the time of such reorganization, for several months after, and until December 16, 1868, the Union Pacific R. R. Co. was constructing its road and telegraph line through the southern part of said county of Laramie, for a distance of about two hundred and sixty miles, from the eastern to the western limits thereof. And said company erected along the line of said railroad a large number of valuable buildings, including depots, warehouses, telegraph stations, station-houses, hotels, round-houses, engine-houses and work shops, estimated, in said complaint, at the value of five hundred thousand dollars, the like estimate of the value of such railroad in Laramie county being one million six hundred thousand dollars. The complainant further alleges that, during the spring and summer of 1868, a number of towns and villages were built along the line of said railroad, and that the value of permanent improvements, during the time last-mentioned, was at least two hundred and fifty thousand dollars; and that, at the time of the reorganization of said county, as aforesaid, the aggregate value of permanent improvements in the towns of Cheyenne,

Sherman and Dale Creek, in said county of Laramie, was not less than five hundred thousand dollars. It is further alleged that, in the summer of 1868, large herds of cattle, of the estimated value of seventy-five thousand dollars, were brought upon Laramie plains, now in Albany county, and that the same have since been increasing in numbers and value; and that, at about the same time, coal mines of considerable value were discovered and worked in what is now Carbon county; and that, on the sixteenth day of December, 1868, the value of the property of a permanent nature, in the entire county of Laramie, was of the value of three million dollars, subject to assessment. It is further shown that the persons named as officers in the act organizing Laramie county, failed to qualify, and by reason thereof the interests and affairs of said county were neglected until January, 1868, when the officers named in the act reorganizing said county, qualified and entered upon the discharge of the duties of their respective offices, until their successors were duly elected and qualified.

The complainant also states that at the time of the construction of the Union Pacific Railroad, in addition to the workmen and other employees of said company, who came within the limits of Laramie county for the purpose of constructing said railroad and the buildings and telegraph lines of said company, a great many felons and other criminals infested the entire country through which the railroad was then being built, committing a large number of crimes and depredations, thereby rendering the employment of numerous peace officers necessary, which, in addition to court, hospital and other expenses arising therefrom, made a heavy expenditure necessary by said county. Which expense, with the salaries, fees and disbursements of the county officers for the year 1868 were, it is claimed, subsequently paid by that portion of the county only which now forms Laramie county, except the sum of twelve thousand dollars assessed upon and paid in 1868 by the entire county as originally organized. It is further claimed by the plaintiff

that the full amount of such expenditure was about forty thousand dollars, leaving a balance of twenty-eight thousand dollars for a contribution, towards the payment of which last-named sum by the counties of Albany and Carbon, this action is brought. It is further shown by the acts of the Dacotah legislature, above referred to, that no provisions were made by the same for the payment of such indebtedness.

To the bill of complaint both of the defendants severally demurred, for the reason : "That the said complainant did not, in and by its said bill, make or state such a case as did or ought to entitle it to any such discovery or relief as is thereby sought and prayed for from or against the defendants," which said demurrers were sustained by the district court, and an appeal is brought to this court from such decision.

*McLaughlin and Steele,* for the plaintiffs, cite: Laws of Wyoming, 1869, 146; Laws of Dacotah, 1868; Laws of Wyoming, 1869, 707; 2 Kent, 331, 332, 333; Cooley's Const. Lim. 488, 504; Vattel's Law of Nations, ——; 21 Penn. St. 107; Morford & Unger, 8 Iowa (Clark), 82; Angel & Ames on Corp. 1 to 20; Dillon on Mun. Corp. 30, 42, 55; Dillon's Cir. Ct. Rep. 130; 5 Ohio St. 496; 8 Iowa, 92; 3 Iowa, 604; 1 Story's Eq. Juris. sec. 64, 469 to 505; 10 Mass. 384; 2 Searg. & Rawle, 117; 27 Penn. 107.

*Corlett and Bramel,* for the defendants, cite: 16 Mass, 76; 52 Penn. 374; 4 Mass. 390; 31 N. Y. 164; 2 Wend. (N. Y.) 109; 11 Ohio, 96; 6 Cush. 575–578; 15 Mass. 197; 8 Iowa, 82; 16 Mass. 16; Cooley's Const. Lim. 189 *et seq.*; Id. 488; 16 Mass. 76; 12 La. 515; Dillon on Mun. Corp. secs. 30 *et seq.*; 3 How. 534; 8 Ohio St. 285; 10 How. 511–541; 4 Gray, 250.

By the Court, THOMAS, J.  The rule appears to be well established, that upon the state of facts set forth in the complainant's bill, where a county has been divided by an act of a legislature, one portion thereof retaining the former name, county-seat, county organization, county buildings,

and all other county property, and the other portion being formed into new counties, that the county retaining such name and organization is responsible and liable solely for the entire indebtedness of the county at the time of such division, and cannot bring an action for contribution against the counties so set off, unless especially authorized so to do by an act or provision of the legislature making such division.   That such legislature is empowered to make a division upon such terms and conditions in reference to the payment of any indebtedness then accrued as it may deem proper, and that even a court of equity cannot interfere in the matter, except in the case of a special provision as above mentioned.

I am further of the opinion that even if the foregoing rule did not hold good, the defendant herein can have no relief in chancery.   From the very nature and condition of affairs set forth in the complaint, it appears that it would be impossible to obtain equitable relief, or that a court or master in chancery could arrive at any just computation of the amount that would be due from the defendants, or either of them, to the complainant.   It appears from the complaint that quite a portion of the original indebtedness has been paid by taxes assessed upon the western portion of the former county of Laramie; but it does not appear, from the showing of the complaint, that it is in the power of the complainant, or that there are any means whatever to prove either the just proportion of the taxes already paid by the counties of Albany and Carbon, or the amount of property existing in December, 1868, in that portion of Laramie county now forming Albany and Carbon.   On the contrary, it rather appears, by the statements of the complainant, that from the vague and indefinite condition in which the affairs of Laramie county then were, and the property contained therein has since continued to be, that an equitable adjudication of the case could not be obtained.   It appears that the western portion of the county had, up to December, 1868, paid their taxes according to the assessments

then made by the officers of Laramie county, and it is to be presumed that such assessments were correct—at least far more so than any which could be arrived at at this late day.

The complaint states that during the year 1868 the officers of Laramie county had qualified, entered upon and were discharging the duties of their offices, and the inference certainly is that they performed their duties in a just and equitable manner; that the assessment for that year was as correct as could under the circumstances be made, and that the amount of taxes then paid by that portion of said county, now forming Albany and Carbon, was the equitable proportion of those counties. If equity is to be administered it should certainly be administered strictly, and while it cannot be denied that any one bringing taxable property into or settling within a county, becomes to an extent responsible for its liabilities, yet in the inchoate condition of affairs in Laramie county, in December, 1868, and from the continual change which has since then taken place in property and the ownership thereof, in the counties of Albany and Carbon, I am unable to perceive that it would be any more equitable to compel the present inhabitants of these last named counties to contribute to the former indebtedness of Laramie county, and from which indebtedness the greater portion of such present inhabitants derived no benefit whatever, than to leave said indebtedness as it now is, already paid by the inhabitants of Laramie county, who certainly derived by far the greatest advantages from the above mentioned expenditure, and paid some time since by those inhabitants of Laramie county, who had apparently a more direct interest in the affairs of Laramie county when such indebtedness accrued than either the present inhabitants and property owners of Laramie county, or of Albany and Carbon counties. While it is true that the three separate quasi corporations, parties to this suit, have since continued the same, it is equally certain that the inhabitants, property, and property owners thereof, have greatly changed,

and in a matter of right or equity I think we should regard the real justice in the case.

The decision of the district court therefore, sustaining the demurrers of the defendants, is approved, and such decision is affirmed.