Forrest J. SCHOELLER and Joyce L. Schoeller, husband and wife, Appellants (Defendants below),

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PARK, State of Wyoming, Appellee (Plaintiff below).

No. 4717.

Supreme Court of Wyoming.

Aug. 18, 1977.

Elmer J. Scott, of Scott & Shelledy, Worland, for appellants.

Joseph E. Darrah, County Atty., Park County, Powell, George L. Simonton, Cody, and Rick Anderson, Powell, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Forrest J. Schoeller and Joyce L. Schoeller, husband and wife, appeal from a judgment permanently enjoining them from violating a zoning resolution by which they were denied the right to operate a store on their property in an unincorporated area of Park County, Wyoming.

The issues described by the appellants for our consideration are these:

1. Did the Board of County Commissioners have the authority to adopt an interim regulation?

2. Was the regulation legally adopted?

3. Was the regulation, adopted as a temporary measure August 1, 1971, enforceable through March, 1976, the date of trial?

The trial court ruled generally that the zoning regulation was valid and entered an injunction prohibiting the defendants from operating their grocery store.

We will reverse the trial court.

## FACTS

On April 17, 1975, the Board of County Commissioners of the County of Park filed a complaint against Mr. and Mrs. Schoeller alleging that, by operating a general store without a variance from a certain resolution freezing existing land uses, they were in violation of § 18–289.6, W.S.1957, 1975 Cum.Supp.[1] That statute provides that no person shall locate, erect, change, maintain or use any building in violation of a resolution adopted by any board of county commissioners under § 18–289.4, W.S.1957, 1975 Cum.Supp.[2]

---

1. Section 18–289.6, W.S.1957, 1975 Cum.Supp., provides:

   "Violation of section 18–289.4; continuing violation.—No person shall locate, erect, construct, reconstruct, enlarge, change, maintain, or use any building or use any land in violation of a resolution, or amendment to such resolution, adopted by any board of county commissioners under section 4 [§ 18–289.4] of this act [§§ 18–289.1 to 18–289.9]. Each day's continuation of such violation is a separate offense."

2. Section 18–289.4, W.S.1957, 1975 Cum.Supp., provides:

   "Same—Preparation of recommendations to effectuate planning and zoning purposes; certification of recommendations to county commissioners; notice and hearing; adoption by majority vote after hearing.— The planning and zoning commission shall prepare recommendations to effectuate the planning and zoning purposes set forth in section 1 of this act [§ 18–289.1] and certify its recommendations to the board of county

The complaint sought a temporary injunction restraining operation of the general store pending the litigation, a permanent injunction restraining the operation of the store until a variance is obtained, assessment of a fine, and award of costs. The matter was tried on March 26, 1976. The sole relief granted was a permanent injunction, from which order and judgment the defendants appeal.

The central question for our attention concerns the validity of the resolution with respect to which the appellants' actions were found to be violative. In order to decide this issue, inquiry into all of the circumstances surrounding the passage of the resolution is essential.

. In the pursuit of the promotion of the public's health, safety, morals and general welfare[3], the Wyoming Legislature, in 1959, passed the County Zoning Act [§§ 18–289.1 to 18–289.9, W.S.1957, 1975 Cum. Supp.], and it is the Commissioners' contention that the Schoellers are in violation of § 18–289.6 thereof (Note 1, supra). By authority of the County Zoning Act, the several boards of county commissioners in Wyoming are empowered to appoint a planning and zoning commission for their respective counties, which commission is, in turn, authorized to formulate and recommend to the boards of county commissioners a comprehensive county zoning plan for the various counties. There are no other provisions in the Zoning Act which contemplate the adoption of any other type of

zoning scheme. Specifically, there are no separate provisions which contemplate the adoption of an interim or emergency plan for the unincorporated areas of the counties.

At its meeting on January 5 and 6, 1960, the Board of County Commissioners of Park County created a zoning commission, and in the late 1960's the unincorporated areas within three miles of the Cities of Powell and Cody were zoned.

In 1971, the Park County Zoning and Planning Commission discussed emergency zoning at various public meetings. Advisory groups had been organized to represent different areas of the community, and at an August meeting there was a request that the commission adopt an emergency zone plan. In response, the zoning commission passed a resolution requesting that the Board of County Commissioners meet at once in special session and adopt an emergency resolution which would have the effect of maintaining the land-use status quo in any unzoned area within the county until a comprehensive county-wide zoning plan could be formulated and recommended.

One week later, on August 24, 1971, and without published notification of its intentions or a public hearing called for the purpose of considering the specific issue, the Board of County Commissioner adopted an "emergency" resolution which was by its own provisions to remain effective for a period of approximately seven months—

commissioners. Before adopting any such recommendations, the board shall hold at least one public hearing. Notice of the time and place of hearing shall be given by one publication in a newspaper of general circulation in the county at least thirty (30) days before the date of such hearing. After public hearing has been held, the board shall then vote upon the adoption of the planning or zoning recommendation. No planning or zoning recommendation shall be put into effect unless a majority of the board votes in favor of its adoption."

3. Section 18–289.1, W.S.1957, 1975 Cum.Supp., provides:

"Authority vested in board of county commissioners; inapplicability of chapter to incorporated cities and towns and mineral re-

sources.—In order to promote the public health, safety, morals and general welfare, the board of county commissioners of any county shall be and hereby is authorized to regulate and to restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use, and other purposes in the unincorporated area of the county. It is provided, however, that nothing in this act [§§ 18–289.1 to 18–289.9] shall be construed to contravene any zoning authority of any incorporated city or town and no zoning resolution or plan shall prevent any use or occupancy reasonably necessary to the extraction or production of the mineral resources in or under any lands subject thereto."

that is, until April, 1972. The resolution contemplated that a public hearing would be held within five weeks, or on or before October 1, 1971, for the purpose of determining the desirability of continuing the status quo until a comprehensive plan could be devised. Notice of the resolution was published on September 2, 1971, but no hearing was ever held. In the meantime, landowners were prohibited from utilizing their land in the unincorporated or unzoned areas of Park County for any purpose different than that for which it was then being used without prior written consent of the County Commissioners. Because of its importance, we repeat this resolution verbatim:

## "RESOLUTION

"WHEREAS the Board of County Commissioners of Park County, Wyoming, has by Resolution, established and created a Planning and Zoning Commission in accordance with Sec. 18–289.2, Wyoming Statutes, 1957, as Amended[4]; [Footnote ours] and

"WHEREAS in connection with such Resolution, a Commission of five (5) members has been appointed; and

"WHEREAS the Planning and Zoning Commission is to prepare and submit a comprehensive plan, including zoning for all unincorporated areas of the County, to promote the public health, safety, morals and general welfare of said unincorporated area; and

"WHEREAS the Board of County Commissioners for Park County, Wyoming, has determined to call a public meeting within the next forty-five (45) days and to present before the public at that meeting the recommendations of the Planning and Zoning Commission of Park County, Wyoming, which recommendations were certified to said Board asking that an emergency resolution be adopted for Park County for the purpose of maintaining the status quo as to the use of land in unincorporated and unzoned areas of the County until a comprehensive plan can be submitted and made operational; and

"WHEREAS an emergency does exist and it is desirable to maintain the status quo as to the use of the unincorporated areas of the County until such time as a public hearing can be held pursuant to Sec. 18–289.4, Wyoming Statutes, 1957, as Amended determining the desirability of continuing status quo until a comprehensive plan can be devised, presented and approved by this Board.

"NOW, THEREFORE IT IS HEREBY RESOLVED that no person or corporation or entity shall use any land in the unincorporated or unzoned areas of Park County for any different purpose than it is now being used without the prior written consent of this body.

"IT IS FURTHER RESOLVED that any change in the use of such land in the unincorporated or unzoned areas of the

4. Section 18–289.2, W.S.1957, 1975 Cum.Supp., provides:

"Planning and zoning commission—Composition; residency requirements, terms and removal of members; vacancies; rules; record; meetings, etc., to be public; secretary.— The board of county commissioners of any county may by resolution create and establish a planning and zoning commission. The commission shall be composed of five members, at least three of whom shall reside in the unincorporated area of the county, to be appointed by the board, provided that this provision shall not effect [affect] the membership composition of any existing commission. The terms of the members appointed to the first planning and zoning commission shall be of such length and so arranged that the terms of one member will expire each year, and thereafter each member shall be appointed for a term of three years; provided, that any member of the commission may be sooner removed for cause other than politics or religion and after public hearing by the board of county commissioners. In the event of a vacancy in the commission, the board of county commissioners shall fill the vacancy by appointment for the unexpired term. The planning and zoning commission shall organize within thirty days after its establishment, shall adopt rules for the transaction of its business, and keep a record of its actions and determinations. Three members shall constitute a quorum for the transaction of business. All meetings, records and accounts of the commission shall be public. The county clerk shall serve as secretary to the commission."

County of Park, should be in the interest of the public health, safety and morals of the general welfare of this County.

"IT IS FURTHER RESOLVED that this Resolution shall take effect immediately and be in full force and effect until October 1, 1971, which affords sufficient time for a public hearing to be held by this Board pursuant to Sec. 18–289.4, Wyoming Statutes, 1957, as Amended, to enable this Board to determine whether or not the recommendation of the Planning and Zoning Commission that an emergency resolution maintaining the status quo as to the use of land in the unincorporated or unzoned areas of the County of Park till said comprehensive plan may be submitted, approved and made operational by this Board be adopted on or before April 1, 1972."

Again, without notice or hearing, the County Commissioners, at their meeting held March 7 and 8, 1972, adopted another resolution extending the original emergency zoning resolution from April 1, 1972 to April 1, 1973. Similar resolutions were adopted in like manner in 1973 and 1974, extending the original resolution of the Commissioners to April 1, 1975, and, thereafter, the land-freeze was extended for six months more or until a county-wide zoning plan could be presented and accepted. The next action taken by the Board in regard to land-use planning occurred at its meeting on July 1 and 2, 1975, when it tabled a proposed comprehensive plan, though accepting it "in principle." In early September of 1975, the Board again extended the freeze, which would have expired in October, for another six months.

The ultimate result of the Board actions was to impose a freeze upon all the land in the unincorporated areas of Park County for five years. Since the imposition of the original land-use freeze of 1971, the Planning and Zoning Commission had under consideration a proposed "comprehensive plan," but this was not its primary concern. The minutes of its meetings show more attention was directed to the enforcement of zoning resolutions and subdivision regulations that had already been enacted than to evolving a county-wide comprehensive zoning plan.

HOLDING

■ The County Commissioners' "emergency" resolution of August 24, 1971, freezing existing land-use in Park County without previously publishing a notice and holding a public meeting as provided by law, was initially a valid exercise of its implied power to do those thing which would make its express power to regulate and restrict the use of buildings and land in unincorporated areas of the county meaningful. This temporary land-freeze, however, became a permanent land-plan, which, under the statutes of this state, cannot be implemented without complying with the provisions with respect to public notice and hearing. As a result, the various subsequent resolutions, passed without compliance with the statutes and which extended for some five years the original land-freeze, were invalid.

■ The County Zoning Act, supra, provides a procedure to be followed in the adoption of zoning resolutions. Indeed, § 18–289.6 (See Note 1, supra), upon which the County's complaint expressly relied, concerns only resolutions adopted under § 18–289.4. That section of the statute (See Note 2, supra) mandates a notice and public hearing as conditions precedent to the adoption of any recommendations of the zoning commission, and no action on such recommendations by the board is authorized until the notice and hearing have been effected. We are compelled to assume that the Commissioners rely upon the County Zoning Act for authority to adopt the 1971 "emergency" resolution since we have not been referred to any other Wyoming statutes authorizing the passage of a resolution freezing the land-use of the county. We find no authority in the Zoning Act which permits county commissioners to freeze the land-use of an entire county for five years under the guise that some kind of a continuing emergency exists—all without compliance with the notice and hearing provisions of the law. This is not to say that a board

of county commissioners cannot impose a temporary land-freeze, pending the adoption of an appropriate resolution under § 18–289.4. It is only to say that there are certain limitations on the exercise of this power.

Our decision in this appeal finds its ultimate resolution in a determination of the manner in which the police power of governmental entities—such as counties and their zoning boards—must, under the law, be exercised. Agencies of state and county government will be charged with acting within reasonable time-frames. They may not, in the name of exercising their delegated police power, act so lethargically as to effectively confiscate private property, nor may their action or inaction so severely hamper its use as to bring about its confiscation. In the exercise of these powers, the governmental agency must operate strictly within the confines of the express or implied authority which has been delegated. In other words, the government, no matter what its proclaimed benevolence, must act restrictively and reasonably as it goes about the peoples' business.

## DELEGATION OF POWER

When referring to "municipalities" and "municipal corporations," these terms are often used in a manner which is intended to also include counties. See *Mosier v. Cowan*, 295 Mich. 27, 294 N.W. 85 (1940); *Perkins v. Board of Com'rs of Cook County*, 271 Ill. 449, 111 N.E. 580 (1916); *Com'rs of Laramie Co. v. Com'rs of Albany Co.*, 1 Wyo. 137, 92 U.S. 307, 23 L.Ed. 552 (1876); *Gonzales v. Personal Collection Service*, Wyo., 494 P.2d 201 (1972); *Kelley v. Rhoads*, 7 Wyo. 237, 51 P. 593, 39 L.R.A. 594, 75 Am.St.Rep. 904 (1898); *Almquist v. Town of Marshan*, Minn., 245 N.W.2d 819 (1976); and Yokley, Zoning Law and Practice (3d Ed. 1965).[5] For this reason, when, in this opinion, we contemplate the law of a municipality's del-

egated authority, our observations can be interpreted as also including the powers delegated to a county. It should be noted, however, that in *Board of Com'rs v. Searight Cattle Co.*, 3 Wyo. 777, 31 P. 268 (1892), we specifically discussed the distinction between the powers of counties and those of other municipal corporations. The precise statutory interpretation which prompted the court to make the distinction was later overruled, but the general underlying principles have been cited in later cases and are still valid:

" . . . The line of distinction between corporations of a public character, such as counties, townships, and school districts, and municipal corporations proper, such as cities and towns, is clearly marked. The former class of corporations are subdivisions of the state for governmental and other public purposes, while the latter class is called into existence by the will of the people, within the limits expressed by petition, by vote, or by the representatives of the people in the legislature. *Shumway v. Bennett*, 29 Mich. 451. *Municipal corporations proper have large local police powers, the delegated right of local legislation granted by the legislature, while counties have not.* . . ." 31 P. 277. [Emphasis supplied]

Exhaustive research has revealed no case in which a distinction was made between the powers of a county and the powers of a municipality in order to prove *greater* power in the county. This is to say, the powers of a county are usually more restricted than those of a municipal corporation, and the following observations should be considered in that light.

We said in *May v. City of Laramie*, 58 Wyo. 240, 271, 131 P.2d 200, 311–312, citing with approval the doctrine described by Cooley, Constitutional Limitations, 8th Ed., 388, 389:

---

5. Those cases in which a county is distinguished from a "municipality" or a "municipal corporation" seem to deal with legislative intent in using those words in particular statutes or with some kind of tort liability. Courts distinguish a county from a "municipal corpo-

ration" more often than they distinguish a county from a "municipality," e. g., *Housing Authority of Birmingham Dist. v. Norris*, 244 Ala. 557, 14 So.2d 527 (1943); *City of Bangor v. Ridley*, 117 Me. 297, 104 A. 230 (1918).

" ' . . . The municipalities must look to the State for such charters of government as the legislature shall see fit to provide, and they cannot prescribe for themselves the details, though they have a right to expect that these charters will be granted with a recognition of the general principles with which we are familiar. The charter or the general law under which they exercise their powers, is their constitution, in which they must be able to show authority for the acts they assume to perform. They have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by delegated authority, so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, *the local authorities can exercise only those which are expressly or impliedly conferred*, and subject to such regulations or restrictions as are annexed to the grant.' " [Emphasis supplied]

See also *Lakota Oil & Gas Co. v. City of Casper*, 57 Wyo. 329, 116 P.2d 861.

In *Whipps v. Town of Greybull*, 56 Wyo. 355, 366, 109 P.2d 805, 807, we said, adopting concepts from Dillon on Municipal Corp., 5th Ed., § 237:

" 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted by express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes—not simply convenient, but indispensable. *Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.*' Dillon on Municipal Corp., 5th Ed., . . . 'The *rule of strict construction does not apply to the mode adopted by the municipality to carry into effect powers expressly or plainly granted, where the mode is not limited or prescribed by the legislature,*

*and is left to the discretion of the municipal authorities.* In such a case the usual test of validity of the act of a municipal body is whether it is reasonable.' Id. § 239." [Emphasis supplied]

In the instant matter, the County Commissioners decided to create the zoning commission under the statute, and having so acted, the "mode" for adopting a zoning plan *is* specified by the statute (§ 18–289.4, supra) and therefore the rule of strict construction must be adopted in determining whether the delegated powers have been acceptably exercised.

With respect to delegated police power, we said in *Blumenthal v. City of Cheyenne*, 64 Wyo. 75, 96, 186 P.2d 556, 563:

"The assertion of counsel for plaintiffs is correct that the only powers possessed by municipalities are those delegated to them. *Stewart et al. v. City of Cheyenne*, 60 Wyo. 497, 154 P.2d 355. The police power is no exception. It is not inherent in municipalities. It is said in 37 Am.Jur. 905: 'In the absence of direct constitutional authorization, the generally accepted view is that any police power which a municipal corporation attempts to exercise must come from the source of the state police power, the state legislature.' And on page 902, it is said: 'The prevailing view in this country is that the police power of municipalities exists solely by virtue of legislative or constitutional grant.' . . ."

As we have indicated, when discussing governmental powers in general, courts usually make no distinction between "municipalities" and "counties," or, for the reasons indicated herein, they hold that counties are distinct from municipalities because their powers are even more *limited* than cities' and towns'. This is especially true in regard to zoning laws.

In *Mosier v. Cowan,* supra, the court said that a county, as a municipal corporation, possesses only those powers which have been conferred on it by the constitution and statutes. *Perkins v. Board of Com'rs of Cook County,* supra, was to the same effect.

In *Horton & Sons, Inc. v. Board of Zoning Appeals of Madison County,* 235 Ind. 510, 135 N.E.2d 243 (1956), the court looked to authorities on municipal law and stated that in general the powers of county boards were administrative and that they had only such powers as might be granted expressly by statute or necessarily implied to execute some express power.

■ When the statutory delegation of power to a local governmental entity specifies a procedure to be followed in the exercise of that power, the procedure becomes a condition of and restriction upon the grant. This was the holding of the Iowa court in an oft-cited opinion which specifically concerned itself with emergency interim zoning. In *Downey v. Sioux City,* 208 Iowa 1273, 227 N.W. 125,[6] the Iowa court said:

"... The general rule in this state, as heretofore stated, is that all rights to exercise the police power in the first instance rest in the state. It has the right to delegate such police power to municipalities, but, as stated, such delegations of power by the state to municipalities are strictly construed and convey no powers except those expressed or necessarily implied to carry out the object of the grant; ... ."

The relationship between the police power and zoning has been stated as follows:

"Zoning ordinances rest upon the police power of the state. They are in derogation of the owner's rights under the common law. The procedure, therefore, laid down by the legislature in exercise of the police power must be strictly construed and strictly followed and any deviation from the law as enacted will be fatal." Alfred D. Jahr, Eminent Domain, Valuation and Procedure, § 4, p. 8 (1953).

In strict compliance with this view, many courts have held that interim-zoning provisions enacted under general statutory authority for zoning are void if the statutory procedures are not followed. *Downey v.*

Sioux City, supra; *Horton & Sons, Inc. v. Board of Zoning Appeals of Madison County,* supra; *Baltimore County v. American Oil Co.,* 245 Md. 719, 229 A.2d 78; *State ex rel. Kramer v. Schwartz,* 336 Mo. 932, 82 S.W.2d 63; *State ex rel. Fairmont Center Co. v. Arnold,* 138 Ohio St. 259, 20 Ohio Ops. 330, 34 N.E.2d 777, 136 A.L.R. 840; and *Kline v. Harrisburg,* 362 Pa. 438, 68 A.2d 182.[7] One textwriter has concluded that if the local government unit has statutory or constitutional authority to enact an interim-zoning ordinance the greater weight of authority requires that the provisions of the enabling provision must be followed strictly. L. Yokley, Zoning Law and Practice, 3d Ed. (1965), § 6–6, pp. 296–297.

Conversely, courts of other jurisdictions have ostensibly approved the enactment of interim-zoning resolutions, freezing land-uses, without notice and hearing. In this respect, appellee would have us rely on *CEEED v. California Coastal Zone Conservation Commission,* 43 Cal.App.3d 306, 118 Cal.Rptr. 315. We see that case as distinguishable from the instant situation. *CEEED* involved the constitutionality of a statute, and the court's discussion of zoning ordinances in that case was mere dicta. Furthermore, its holding was to the effect that the statute did not violate the due-process clause of the Fourteenth Amendment. When the court stated that interim-zoning ordinances might be enacted without notice and hearing, the question of the conflict of an ordinance with procedural requirements of an enabling act was not considered. When a similar statement was made in *Metro Realty v. County of El Dorado,* 222 Cal.App.2d 508, 35 Cal.Rptr. 480, the court specifically relied on the fact that the relevant enabling act neither expressly provided for notice nor did it contemplate any.

The County has also called the case of *McCurley v. City of El Reno,* 138 Okl. 92, 280 P. 467, to our attention. At first blush,

6. Among significant authorities citing *Downey,* supra, are *State ex rel. Kramer v. Schwartz,* 336 Mo. 932, 82 S.W.2d 63; and *Kline v. Harrisburg,* 362 Pa. 438, 68 A.2d 182.

7. See also *State v. City of Nashville,* 166 Tenn. 191, 60 S.W.2d 161; and *Krajenke Buick Sales v. Kopkowski,* 322 Mich. 250, 33 N.W.2d 781.

this opinion seems to support the propriety of a temporary zoning ordinance not in conformity with the requirements of a zoning enabling act. However, the court made reference to certain Oklahoma statutes, other than the zoning enabling act, and it would appear that it was these statutes which the court deemed sufficient to confer such comprehensive police powers upon municipalities as would overcome any failure of the temporary ordinance to conform to the enabling act. The *McCurley* court's reliance on *Miller v. Board of Public Works,* 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479, error dismissed 273 U.S. 781, 47 S.Ct. 460, 71 L.Ed. 889; and *Fowler v. Obier,* 224 Ky. 742, 7 S.W.2d 219, which decisions were based upon conclusions that the power to pass the ordinances had been delegated either by a non-zoning statutory enactment or under constitutional provisions, support this distinction. If this distinction were to be questioned, the *McCurley* opinion would have to then be considered as not being in harmony with the great weight of authority. See *Downey,* supra, and *Horton & Sons, Inc.,* supra. For a similar discussion distinguishing *McCurley,* see *State ex rel. Kramer,* supra, and *Kline,* supra.

▆▆▆ We find ourselves unable to embrace either of these divergent positions and still give meaning to the rules of statutory construction previously announced by this court. To give substance to our precedents pertaining to the exercise of police powers by entities of government, we find that the County Zoning Act must be applied in such a way as to reasonably restrict the actions of boards of county commissioners. At the same time, we realize that to make

the theories of planning meaningful, there must be a means to prevent changes in the conditions of a county pending the formulation of a comprehensive plan under § 18–289.3.[8] See *New Jersey Shore Builders Ass'n v. Township of Ocean,* 128 N.J.Super. 135, 319 A.2d 255; and *Monmouth Lumber Co. v. Ocean Tp.,* 9 N.J. 64, 87 A.2d 9, 14. The means necessary to maintain the status quo can be supplied by reference to the powers expressly and impliedly conferred by the County Zoning Act, taken in a light which is consistent with a reasonable exercise of police powers.

▆▆▆ Section 18–289.1, supra, provides that the board of county commissioners is authorized to regulate and restrict the use of buildings and land in unincorporated areas of the county. We find that this express power is sufficient in and of itself, or, in the alternative, necessarily implies the authority, to adopt recommendations which would freeze such building and land-uses. We further find that in order to make such a power meaningful, the board necessarily must have the appurtenant power to enact a freeze-resolution without notice and hearing. The exercise of this power, however, is subject to certain restrictions. Such a resolution may not be extended, as a matter of course, so that it essentially becomes a board's comprehensive plan, without notice and hearing. The restrictions which would bar such a result can be found in the plain language of § 18–289.4, supra. Under our construction of this provision, a freeze-resolution may initially continue only for a length of time which affords an opportunity to give notice and hold a hearing on the issue of whether

---

8. Section 18–289.3, W.S.1957, 1975 Cum.Supp., provides:

"*Same—Preparation and amendment of comprehensive plan; purpose of plan; plan to be certified to county commissioners for certification; notice and hearing prior to certification; petition for amendment of plan.* —The planning and zoning commission may prepare a comprehensive plan including zoning and from time to time amendments thereto for the purpose of promoting the public health, safety, morals and general welfare of the unincorporated areas of the county, and

certify the plan to the board of county commissioners. Before so certifying its plan, or amendments thereto, to the board, the commission shall hold at least one public hearing. Notice of the time and place of hearing shall be given by one publication in a newspaper of general circulation in the county at least thirty (30) days before the date of such hearing. Any person shall have the right to petition the planning and zoning commission for the amendment of any zoning plan adopted under the provisions of this act [§§ 18–289.1 to 18–289.9]." [Emphasis supplied]

or not such a resolution should be given more permanent status under § 18–289.4, supra.

■■■ In a capsule, then, we see the County Zoning Act as authorizing the following continuum: (1) On recommendation of the county zoning commission, the board can adopt a freeze-resolution in appropriate circumstances without prior notice and hearing; (2) pursuant to § 18–289.4, supra, notice of such action shall be promptly given in a newspaper of general circulation in the county, which also shall notice a hearing to be held on the thirtieth day after the publication on the question of whether or not the freeze-resolution should be extended pending the formulation of a comprehensive plan; and (3) within a reasonable time, if the freeze-resolution is so extended, the board shall adopt a comprehensive plan under § 18–289.3, supra. Such a construction comports with the planning concepts intended by the legislature, while at the same time restricting a board's ability to freeze land-uses for an unreasonable amount of time without the statutorily-required notice and hearing.

■■■ Applying this construction to the instant case, it is apparent that the August 24, 1971, freeze-resolution was initially proper in substance. It even contemplated compliance with § 18–289.4, supra, by providing that it would be effective until October 1, 1971—a time-period which would afford an opportunity for the required public hearing. The Board even went so far as to publish notice of the original freeze-resolution on September 2, 1971. The contemplated hearing, however, was never held and the freeze-resolution—taking on a life of its own—continued in effect until March 7, and 8, 1972, when the Board began a course of almost automatic annual extensions. We find, therefore, that the freeze-resolution became void on or about October 1, 1971, by virtue of § 18–289.4, supra, and its own language. Even if the required public hearing had been held on or about October 1, 1971, we are not convinced that the freeze-resolution could have been annu-

ally extended for an indefinite time thereafter. The board must be diligent in formulating a comprehensive plan—when there is an interim freeze-resolution in effect—in order to minimize the possible deprivation of property rights. The evidence here discloses that more attention was directed to other zoning and subdivision regulations, already in effect, than to the formulation of a comprehensive plan.

■■■ We will not decide here whether the action of the County Commissioners violated the due-process provisions of the United States and Wyoming Constitutions. Courts uniformly decline consideration of the constitutionality of a statute if disposition of the case pending can be made on other grounds. *State v. Kelley,* 17 Wyo. 335, 98 P. 886; *Budge v. Board of Com'rs of Lincoln County,* 29 Wyo. 35, 208 P. 874; *State ex rel. Keefe v. Jones,* 62 Wyo. 61, 161 P.2d 135; *In re Owl Creek Irr. Dist.,* 71 Wyo. 30, 253 P.2d 867, reh. den. 71 Wyo. 70, 258 P.2d 220. In *Tavegia v. Bromley,* 67 Wyo. 93, 214 P.2d 975, we reached the same conclusion and cited Cooley on Constitutional Limitations. All of the above cases were concerned with statutes, but the same rule is applicable where consideration of the constitutionality of a county board's resolution is in issue. In any event, where a constitutional question is raised, if the record also presents some other and clear ground upon which the court may rest its judgment, that course will be adopted and the question of constitutional power will be left for consideration until that day when a case arises which cannot be disposed of without considering it, and when, consequently, a decision upon such question must be met head-on. 1 Cooley, Constitutional Limitations, 8th Ed., pp. 338–339.

Reversed.

RAPER, Justice, dissenting.

I dissent.

The plaintiff county, in my opinion, had authority under its general powers [1] to pass

1. Section 18–48(4), W.S.1957, provides that a county is empowered "To make all contracts

and do all other acts in relation to the property and concerns of the county necessary to the

a resolution holding development in status quo as nearly as practicable while the formal comprehensive plan contemplated by § 18–289.3, W.S.1957, Cum.Supp.,[2] was being formulated and it was not necessary to conform to the notice requirements of § 18–289.4, W.S.1957, Cum.Supp. Since the county was operating within an authorized power, it has implied and inherent power to do those things both necessary and proper to directly effect the functions by the legislature created. *Nation v. State ex rel. Fire Fighters Local 279, IAFF,* Wyo.1974, 518 P.2d 931; *Gonzales v. Personal Collection Service,* Wyo.1972, 494 P.2d 201 (involved a county hospital.) I conclude that the resolution exercised a power incident to the granted power to zone.

That procedure has acceptance. In that a dissent settles no issue and is not authoritative precedent,[3] I will only refer to the Annotation, "Validity and Effect of 'Interim' Zoning Ordinance," 30 A.L.R.3d 1196, 1205, where the author summarizes:

"Throughout this annotation, in a variety of contexts, certain related factors seem to have played an influential role in the courts' decisions. One of these is the timing or chronological sequence of events. More specifically, the courts have often stressed the temporal relationship between the steps taken by the municipality toward the enactment of a permanent zoning ordinance and the steps taken by the individual landowner toward the acquisition of vested rights (a second factor of general importance) in a particular use of his property. Generally speaking, it appears that the further along the municipality has progressed when the landowner applies for a building permit or makes expenditures, the more likely it is that the interim ordinance (or the refusal or revocation of the permit) will be upheld. This seems particularly true where one of these steps taken by the municipality constitutes notice to the landowner of the pendency of a permanent zoning ordinance. Notice, however, is only one aspect of a larger factor—whether the municipality and the individual landowner acted in good or bad faith in seeking their particular interests. As to the municipality, good faith seems to mean that its officials honestly intend to enact a permanent zoning ordinance as soon as any necessary studies are completed (as contrasted with harassment or intentional delays directed at thwarting the plans of a particular landowner). Similarly, the landowner appears to act in good faith if he proceeds only in reliance on a lawfully issued permit and without knowledge or notice that his proposed use will be inconsistent with pending zoning plans.

"Finally, it may be significant that interim zoning ordinances containing specific time limits on their effective life have usually been held valid and that the absence of a specific limit on duration has sometimes contributed to the invalidity of interim zoning ordinances."

Those elements favorable to the position of the county and zoning commission were present.

The stop-gap resolution was by no means the "comprehensive" plan contemplated by § 18–289.3. We cannot isolate § 18–289.4

---

exercise of its corporate or administrative powers;"

**2.** Section 18–289.3 is as follows:

"The planning and zoning commission may prepare a comprehensive plan including zoning and from time to time amendments thereto for the purpose of promoting the public health, safety, morals and general welfare of the unincorporated areas of the county, and certify the plan to the board of county commissioners. Before so certifying its plan, or amendments thereto, to the board, the commission shall hold at least one public hearing.

Notice of the time and place of hearing shall be given by one publication in a newspaper of general circulation in the county at least thirty (30) days before the date of such hearing. Any person shall have the right to petition the planning and zoning commission for the amendment of any zoning plan adopted under the provisions of this act [§§ 18–289.1 to 18–289.9]."

**3.** *Woodward v. Haney,* Wyo.1977, 564 P.2d 844.

from the whole act dealing with county zoning and hold that every time some incidental action is taken relating to zoning, there must be notice and hearing. Statutes must be read in pari materia. *Stringer v. Board of County Commissioners of Big Horn County*, Wyo.1960, 347 P.2d 197. Statutes must be read in a reasonable manner. *In re Romer*, Wyo.1968, 436 P.2d 956. We cannot disassociate the general from the specific powers of the county commissioners. County commissioners must be given some latitude.

As said in *Nottingham Village, Inc. v. Baltimore County*, 1972, 266 Md. 339, 292 A.2d 680, 688:

" * * * A comprehensive plan is something more than a detailed zoning map, *Hewitt v. County Commissioners of Baltimore County, supra*, 220 Md. [48] at 58, 151 A.2d 144, and should apply to a substantial area, be the product of long study, and control land use consistent with the public interest, *Trustees of McDonogh Educational Fund & Institute v. Baltimore County*, 221 Md. 550, 561, 158 A.2d 637 (1960). In other words, an important characteristic of a comprehensive plan is that it be well thought out and give consideration to the common needs of the particular area, *Huff v. Board of Zoning Appeals*, 214 Md. 48, 58–59, 133 A.2d 83 (1957); *Anne Arundel County v. Ward*, 186 Md. 330, 340, 46 A.2d 684 (1946). A comprehensive plan is unlikely to have tangible physical existence save as it appears in the zoning ordinance itself, *Angermeier v. Sea Girt*, 27 N.J. 298, 142 A.2d 624, 630 (1958), and the concept of comprehensiveness may be found in the fact that it zones all, or substantially all, of a political subdivision, that it regulates all uses—good, bad and indifferent, or that it covers all of the usual factors of land utilization: height, area and use, * * * ."

The freeze was no plan at all but only an effort to hold back uncontrolled development. The agency charged with the responsibility of preparing a well-thought-out plan fitting the particular community concerned must be given some rein and not be forced to come up with some half-baked plan just to meet some mythical deadline reached arbitrarily by this court on the basis of its own ideas and not the evidence and not the judgment of the agency having the responsibility and not the determination of a trial judge a lot closer to the situation than we are. I wonder since when we have become qualified as experts on how long it takes to prepare a comprehensive zoning plan and resolution for Park County?

The hard-nosed position taken by the majority is in conflict with the legislative purpose of zoning. It was wisely said in *Downham v. City Council of Alexandria*, D.C.E.D. Va.1932, 58 F.2d 784:

"Furthermore, it seems to the court that it would be a rather strict application of the law to hold that a city, pending the necessary preliminaries and hearings incident to proper decisions upon the adoption and the terms of a zoning ordinance, cannot, in the interim take reasonable measures temporarily to protect the public interest and welfare until an ordinance is finally adopted. Otherwise, any movement by the governing body of a city to zone would, no doubt, frequently precipitate a race of diligence between property owners and the adoption later of the zoning ordinance would in many instances be without effect to protect residential communities—like locking the stable after the horse is stolen."

It is fundamental that a statute be construed in the light of the objects and purposes to be accomplished. *Wyoming State Treasurer v. City of Casper*, Wyo.1976, 551 P.2d 687.

I gather from the sense of the scolding majority that the board of county commissioners and the zoning commission were dragging their feet in enacting a comprehensive, permanent zoning resolution. That is contrary to the finding of the trial judge and contrary to any evidence in the case. The trial judge entered a general finding in favor of the county. In the absence of special findings, a judgment carries with it every finding of fact supported

by the evidence and will be sustained on any legal ground appearing in the record. *Peters Grazing Association v. Legerski,* Wyo.1976, 544 P.2d 449, reh. den. 546 P.2d 189. The defendant presented no evidence of the unreasonableness of the delay in formulating a comprehensive plan.

The legislature piled a lot of duties on this unpaid zoning commission made up of dedicated citizens. It was loaded down first with the duty of collaborating with the cities of Cody and Powell in zoning the immediate areas surrounding those municipalities. That was time-consuming. Then by § 18–289.1, et seq., W.S.1957, as amended, § 18–289.16, in particular, the county zoning commission was given the chore of evaluating county subdivision permits. During the four years preceding the hearing, the commission was called upon to investigate and recommend to the board of county commissioners action on *fifty-two* county subdivisions.

The commission has not been idle nor piddling along. While solving one problem after another with its multitude of duties, it has held many hearings in the development of a comprehensive county zoning plan, including public meetings at Cody, Powell and Meteetse. The commission in developing a zoning plan has had to deal with a conglomeration of federal agencies since 60 percent of the land in Park County is owned by the United States. Intermingled with the recreation attractions of the county are the predominant industries of oil and agriculture.

A comprehensive plan was prepared by the commission and was submitted to the board of county commissioners in July, 1975, but disapproved by that body. Its inadequacy was acknowledged by the commission.[4] There was emergency after emergency, intensified by the complexity of the problem and the hindrances under which the commission was operating. It had no money with which to operate until 1975, when the State made a grant of $10,-000.00 to assist and the county scraped up another $35,000.00 for professional help.

There is no evidence of bad faith or lack of diligence on the part of the commission or the board of county commissioners. There is evidence of bad faith by the defendant, which the majority is approving. The defendant misrepresented to the commission. He acknowledged the authority of the commission and applied to it for permission to move the building onto the land for "storage" purposes. The commission granted that permission; the defendant promptly opened it as a store, which, after hearing, had been denied.

By applying for, receiving and accepting a permit to move the building onto the land for "storage," under the resolution, the defendant is precluded from questioning the validity of the ordinance. It is a well-known and widely-applied rule that one voluntarily proceeding under a statute or ordinance, claiming benefits thereby conferred, cannot question its validity to avoid its burden. *St. Louis Public Service Company v. City of St. Louis,* Mo.1957, 302 S.W.2d 875, 879; *James H. Dailey's Estate v. Lincoln,* 1921, 107 Neb. 151, 185 N.W. 332. There is and there can be no legal principle which will place a premium on deliberate violation of law and allow the violator to profit from his own wrong. *Wilkins v. City of San Bernardino,* 1946, 29 Cal.2d 332, 175 P.2d 542. The law can hardly in good conscience honor deceit.

Finally, the defendant had his remedy of appeal under the Administrative Procedure Act, § 9–276.32, W.S.1957, Cum.Supp. He was advised of that right. I realize that if the commissioners and board were acting in excess of their authority, passing up the prescribed administrative procedures, is not a matter of concern. *Pan American Petroleum Corporation v. Pierson,* 10 Cir. 1960, 284 F.2d 649, 656, cert. den. *Pierson v. Pan American Petroleum Corporation,* 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 848. However, as explained, I see no acting in excess of

---

4. I gather from the evidence that it was a form adapted from a more urban community and not tailored to the unusual aspects of Park County, quickly conceived to get something on the books; the problem with rushing a project only to get it done.

authority so the defendant is precluded from in this proceeding collaterally attacking the action of the commission and the board. He has failed to exhaust his administrative remedies. When the defendant neglected to appeal from the action of the commission of the board in denying his application to open a store, he was in the same position as if he filed a late notice of appeal. The question was settled. No one is entitled to judicial relief until the *prescribed* administrative remedy has been exhausted. *City of Cheyenne v. Sims,* Wyo.1974, 521 P.2d 1347. The prescribed remedy was appealed from the administrative ruling through the procedure specified by the Administrative Procedure Act. The county and commission had a right to rely on the final decision of the administrative agency.

I am even concerned about the fact that no objection to the denial of the defendant's application for a permit to open a store was ever made to the agency on the ground that it was operating under an invalid resolution. While dealing with review from administrative agency actions, 3 Davis, Administrative Law Treatise, § 20.06, pp. 96–97, observes that:

> "Holdings of state courts generally refuse to consider questions on judicial review that have not been urged before the agency. The opinions usually rest upon the analogy to the relation between appellate and trial court, and seldom cite federal cases. State statutes often provide that no objection not raised may be considered by the reviewing court in absence of extraordinary circumstances. Only occasional cases allow reviewing courts to consider issues not presented to the agency."

Administrative agencies, such as this one here, are entitled to be treated with some decency. As said in *United States v. L. A. Tucker Truck Lines, Inc.,* 1952, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54:

> " * * * Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the ad-

ministrative body not only has erred but has erred against objection made at the time appropriate under its practice."

Courts must temper their decisions with reason. Where is the county left with the many other actions (at least 100) the commission took under authority of the resolutions? Are they void? It is easy to say they will have to be considered one at a time in some other appropriate proceedings. The holding of the majority is nothing but unsettling, leaving the county, the zoning commission and the public holding the bag.

I would have affirmed the district court.