MOSIER *v.* WAYNE COUNTY BOARD OF AUDITORS.

1. COUNTIES—DEFINITION.
   A county is a municipal corporation and possesses only those powers which have been conferred upon it by the Constitution and the statutes (Const. 1908, art. 8, §§ 1, 7; 1 Comp. Laws 1929, §§ 1101, 1130).

2. CONSTITUTIONAL LAW—DECENNIAL REAPPORTIONMENT OF LEGISLATURE.
   It is the duty of the legislature to obey the constitutional mandate as to decennial rearrangement of senatorial districts and reapportionment of representatives, and legislators are accountable to the electorate if they fail to discharge their duty (Const. 1908, art. 5, § 4).

3. COUNTIES—REAPPORTIONMENT OF LEGISLATURE.
   Neither the Constitution nor statutes give authority to a county to expend public funds for the purpose of procuring reapportionment of representatives in the State legislature (Const. 1908, art. 5, § 4; art. 8, §§ 1, 7; 1 Comp. Laws 1929, §§ 1101, 1130).

4. SAME—BOARDS OF SUPERVISORS—PROPAGANDA BUREAUS.
   Boards of supervisors were not designed to function as propaganda bureaus.

5. COSTS—PUBLIC QUESTION—DISCRETION OF COURT.
   In case involving power of supervisors to expend money to procure reapportionment of legislature, Supreme Court, in the exercise of its discretionary powers as to costs, allows costs of both trial and appellate courts to prevailing taxpayer appellant and *amici curiae,* notwithstanding question involved is a public one.

   McALLISTER, J., dissenting.

Appeal from Wayne; Chenot (James E.), J. Submitted April 5, 1940. (Docket No. 54, Calendar No. 41,043.) Decided October 7, 1940.

Taxpayer's bill by Duane H. Mosier to restrain the Wayne County Board of Auditors from paying

out certain money appropriated by the board of supervisors to conduct a survey for reapportionment of the State legislature. Bill dismissed. Plaintiff appeals. Reversed and remanded.

*Duane H. Mosier, in pro per.,* appellant.

*Duncan C. McCrea,* Prosecuting Attorney, and *Samuel Brezner,* Assistant Prosecuting Attorney, for appellees.

*Lewis & Watkins (William F. Fratcher,* of counsel), *amici curiae.*

BUSHNELL, C. J. Plaintiff filed a taxpayer's bill of complaint to restrain the board of auditors of Wayne county from paying out additional money, which had been appropriated by the board of supervisors on October 25, 1939, for the purpose of carrying forth the preliminary survey "for the reapportionment of the State of Michigan." On April 14, 1939, the board unanimously adopted a resolution appropriating from the public funds of the county of Wayne the sum of $3,000 for the purpose of employing "a competent person well versed on the subject of reapportionment" to make a survey among the industrial and agricultural counties of the State and to form in said counties local committees, which would later form a State-wide committee to propose and submit to the electors of the State of Michigan at an election in the year 1940 a constitutional amendment that would remove alleged discrimination and "would assure to all counties of the State, an equal voice in State government for all of the people of Michigan."

The trial judge held that the board had authority to make the appropriation of October 25, 1939, and

that it was made for a public purpose.   The court dismissed plaintiff's bill of complaint.

The Constitution of 1908 provides that:

"Each organized county shall be a body corporate, with such powers and immunities as shall be established by law."   (Art. 8, § 1).

"A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law."   (Art. 8, § 7).

A county is a municipal corporation and possesses only those powers which have been conferred upon it by the Constitution and the statutes. *Attorney General* v. *Marr,* 55 Mich. 445; *McCurdy* v. *County of Shiawassee,* 154 Mich. 550; *Bloss* v. *Jackson County Supervisors,* 170 Mich. 607 (Ann. Cas. 1914A, 1191); and *Bond* v. *Cowan,* 272 Mich. 296.

Defendants contend that the statutory authorization for the appropriation which is questioned here is 1 Comp. Laws 1929, § 1101 (Stat. Ann. § 5.283), which reads:

"Each organized county shall be a body politic and corporate, for the following purposes, that is to say: To sue and be sued; to purchase and hold real and personal estate for the use of the county; to borrow money for the purpose of erecting and repairing county buildings, and for the building of bridges; to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county."

And 1 Comp. Laws 1929, § 1130 (Stat. Ann. § 5.331), which reads:

"The said several boards of supervisors shall have power and they are hereby authorized at any meeting thereof lawfully held: * * *

"Sixteenth, To represent their respective counties and to have the care and management of the property and business of the county in all cases where no other provision shall be made."

Is it the business of the county to see that legislative reapportionment is effected? Section 4, art. 5, Const. 1908, provides:

"At the session in nineteen hundred thirteen, and each tenth year thereafter, the legislature shall by law rearrange the senatorial districts and apportion anew the representatives among the counties and districts according to the number of inhabitants, using as the basis for such apportionment the last preceding United States census of this State. Each apportionment so made, and the division of any county into representative districts by its board of supervisors, made thereunder, shall not be altered until the tenth year thereafter."

The brief of *amici curiae* cites and discusses authorities from other jurisdictions which hold that a county may expend money for the purpose of influencing legislation. Many of them deal with the question of whether or not lobbying contracts are valid from the point of view of public policy.

An examination of these authorities indicates that, in most instances, the county was held to be authorized to spend money to influence certain legislation which had a direct connection with the business of the county. See, for instance, *State, ex rel. Hunt,* v. *Okanogan County,* 153 Wash. 399 (280 Pac. 31, 67 A. L. R. 668), where a contract was upheld under the terms of which the county employed a person to gather and present facts and arguments to Congress in support of an equitable claim of the county to reimbursement by the United States for moneys expended by the county for benefits enjoyed by Indian allottees who were exempt from taxation.

Legislative power in this State is reposed in a senate of 32 members (Const. 1908, art. 5, § 2), and a house of representatives, consisting of not less than 64 nor more than 100 members (Const. 1908, art. 5, § 3). The senators and representatives are responsible to the people. It is the duty of the Legislature to obey the mandate of reapportionment as expressed in section 4 of article 5 of the Constitution, and its members are accountable to the electorate if they fail to discharge this duty. Neither the Constitution nor legislative enactment gives authority to a county to expend public funds for the purpose of procuring reapportionment.

The matter of representation in the legislature does not have enough relation to the property and business of the county to require a holding that the action of the board of supervisors in the instant case was within its constitutional and statutory power. If appellees are right in their contention, then by the same token any or all of the other counties of the State might with equal propriety appropriate any sum of money considered proper from the public funds of the county to finance a counteractivity. And further, such expenditure of county funds might be contrary to the desire and even subject to the disapproval of a large portion of the county taxpayers who were firmly of the conviction that refusal to reapportion representation in Michigan in accord with constitutional mandate is decidedly detrimental to our general governmental welfare. And we think it can safely be said that it was never contemplated under the Constitution and statutes of this State that our boards of supervisors should function as propaganda bureaus.

The trial court erred in dismissing plaintiff's bill of complaint and its decree is vacated and the cause remanded for further proceedings not inconsistent

with this opinion. Notwithstanding the fact that the question involved is a public one, under our discretionary powers as to taxation of costs, the taxpayer appellant and *amici curiae* shall have costs of both courts. It is so ordered.

SHARPE, CHANDLER, NORTH, and BUTZEL, JJ., concurred with BUSHNELL, C. J.

WIEST, J. (*concurring*). I concur.

Public funds may not be appropriated nor employed for the purpose of directly or indirectly hiring a propagandist for political ends or to influence legislative or other governmental action.

CHANDLER, J., concurred with WIEST, J.

MCALLISTER, J. (*dissenting*). I am in accord with the determination made in this case by Judge Chenot in the Wayne circuit court; and am of the opinion that the order dismissing plaintiff's bill of complaint should be affirmed.

The Constitution of Michigan, 1908, provides that each organized county shall be a body corporate with such powers and immunities as shall be established by law and that a board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law. (Art. 8, §§ 1, 7.)

By statute it is provided:

"Each organized county shall be a body politic and corporate, for the following purposes, that is to say: To sue and be sued; to purchase and hold real and personal estate for the use of the county; to borrow money for the purpose of erecting and

repairing county buildings, and for the building of bridges, to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county." 1 Comp. Laws 1929, § 1101 (Stat. Ann. § 5.283).

The question before us is whether the action of the board of supervisors of Wayne county, in appropriating the sum of $3,000 for the purpose of employing a person versed on the subject of reapportionment, to make a survey among the counties of the State and to form committees in such counties with the object of proposing a constitutional amendment to assure all counties an equal voice in State government, was a necessary act in relation to the concerns of the county. With the wisdom of the method adopted, this court is not concerned.

At the present time Wayne county, under existent laws, has 7 senators and 21 representatives in the State legislature. The Constitution of 1908, art. 5, § 4, provides:

"At the session in nineteen hundred thirteen, and each tenth year thereafter, the legislature shall by law rearrange the senatorial districts and apportion anew the representatives among the counties and districts according to the number of inhabitants, using as the basis for such apportionment the last preceding United States census of this State. Each apportionment so made, and the division of any county into representative districts by its board of supervisors, made thereunder, shall not be altered until the tenth year thereafter."

Section 1133 of 1 Comp. Laws 1929 (Stat. Ann. § 5.334), provides:

"The said respective boards of supervisors in each county entitled to more than one representative in the State legislature, shall have power, and it

shall be their duty, at their annual meeting in the year eighteen hundred and fifty-one and at their annual meeting next after each subsequent apportionment of such representatives by the legislature, to divide their respective counties into representative districts, equal in number to the number of representatives to which such county is entitled by law, in accordance with section three of article four of the Constitution of this State; and they shall cause to be filed in the office of the secretary of State, and in the office of the clerk of such county, within thirty days after such division, a description of such representative districts, specifying the number of each district and the population thereof, according to the last preceding enumeration.''

If representation from Wayne county were apportioned in accordance with the United States census of 1930, Wayne county would be entitled to be represented by 12, instead of 7, of the 32 seats of the senate, and 39, instead of 21, seats in the house of representatives. At the present time, based upon the Federal census of 1930, Wayne county, with 39 per cent. of the population of the State, has approximately 21 per cent. of the representation in the legislature; and it is a valid contention that about 350,000 citizens of Wayne county out of a total of 1,888,946 are without representation in the State legislature. Considering the vast manufacturing interests, the contribution to taxation for the State government, and the many vital questions of public welfare, health, administrative machinery, and matters affecting public policy, it would seem obvious that legislative representation, in accordance with claimed constitutional and statutory rights, was a necessary concern of the county; and that, inasmuch as the county is authorized to do necessary acts in relation to the concerns of the county, it was within the jurisdiction of the board of supervisors to pro-

vide for an appropriation for such an objective. There are few objects of representative government of more concern to citizens than representation in the legislative branch of such government. If the action taken to bring about such representation is a necessary act in relation to the concerns of the county, there can be no question that the action of the board of supervisors is constitutional. The appropriation in this case was for a public purpose. The constitutionality of the action of the board of supervisors in making the appropriation in question and entering into a contract to attain the object sought is subject to the same rules governing ordinances of a city government or statutes passed by the legislature.

With regard to the presumption of constitutionality, the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature. *Goldstein* v. *City of Hamtramck,* 227 Mich. 263; 43 C. J. p. 569. A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. *Scott* v. *Smart's Executors,* 1 Mich. 295; *Sears* v. *Cottrell,* 5 Mich. 251; *Thompson* v. *Auditor General,* 261 Mich. 624. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. *Attorney General, ex rel. Barbour,* v. *Lindsay,* 178 Mich. 524; *Bowerman*

v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859).  A statutory determination will not be set aside as denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.  *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U. S. 580 (55 Sup. Ct. 538) ; *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179).  It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength.  It is not within the competency of the courts to arbitrate in such a contrariety.  *Borden's Farm Products Co., Inc.,* v. *Baldwin,* 293 U. S. 194 (55 Sup. Ct. 187).

The order of the circuit court dismissing plaintiff's bill of complaint should be affirmed.

The late Justice POTTER took no part in this decision.