781 F.Supp. 1230 (1991)
UNITED STATES of America, Plaintiff and Counter-Defendant,
and
Wayne County Department of Health, Air Pollution Control Division, Plaintiff,
v.
STATE OF MICHIGAN, Defendant, Counter-Plaintiff and Cross-Plaintiff,
v.
CITY OF DETROIT, a municipal corporation, and Detroit Water and Sewerage Department, Defendants and Cross-Defendants,
v.
ALL COMMUNITIES AND AGENCIES UNDER CONTRACT WITH THE CITY OF DETROIT FOR SEWAGE TREATMENT SERVICES
v.
DETROIT AREA LAUNDRY POLLUTION CONTROL GROUP, a voluntary, non-profit, unincorporated association, and its Members
v.
The FOOD AND ALLIED INDUSTRIES COMMITTEE OF METROPOLITAN DETROIT, a voluntary non-profit, unincorporated association, and its Members, Intervening Rate Challengers.
UNITED STATES of America and Frank J. Kelley, Attorney General for the State of Michigan, ex rel. Michigan Natural Resources Commission, Michigan Water Resources Commission, and David F. Hales, Director of Michigan Department of Natural Resources, Plaintiffs,
v.
WAYNE COUNTY, MICHIGAN, City of Allen Park, City of Belleville, Township of Brownstown, City of Dearborn Heights, City of Ecorse, City of Lincoln Park, City of River Rouge, City of Southgate, City of Taylor, Township of Van Buren, City of Wyandotte, Southgate-Wyandotte Relief Drainage District, Ecorse Creek Pollution Abatement Drain, Defendants.
UNITED STATES of America, and State of Michigan, Plaintiffs,
v.
CITY OF DETROIT, MICHIGAN, Defendant.
Civ. A. Nos. 77-71100, 87-70992 and 89-72937.
United States District Court, E.D. Michigan, S.D.
December 23, 1991.
*1231 Kenneth D. Kruse, Pagnucco, Kruse & Tamsen, P.C., Allen Park, Mich., for City of Allen Park.
Pamela G. Shea, Beier, Howlett, Ternan, Devine, Jones, Shea & Hafeli, P.C., Bloomfield Hills, Mich., for Oakland County.
C. Gerald Hemming, Law, Hemming, Essad & Palaczyk, P.C., Plymouth, Mich., for Canton Tp., Northville Tp., Plymouth Tp. and Western Wayne Tp. Utility Authority (WTUA).
Leonard A. Krazyzaniak, Jr., Vandeveer & Garzia, P.C., Detroit, Mich., for City of Dearborn.
Adam J. Dadaou, Inkster, Mich., for City of Dearborn Heights.
Milton Spokojny, Farmington Hills, Mich., for City of Inkster.
Harry C. Tatigian, Livonia, Mich., for City of Livonia.
R.W. Lowe, Lowe & LeWandowski, P.C., Plymouth, Mich., for City of Plymouth.
Owen J. Cummings, Cummings, McClorey, Davis & Acho, P.C., Livonia, Mich., for Redford Tp.
Ronald E. Mack, Berry, Hopson, Francis, Mack & Siefman, P.C., Detroit, Mich., for City of Romulus.
Patrick B. McCauley, Sommers, Schwartz, Silver & Schwartz, P.C., Southfield, Mich., for Van Buren Tp. and Taylor.
Richard S. Clark, Millar, Weinberg, Necker, Johnson, Clark & Ryan, P.C., Wayne, Mich., for City of Wayne.
Charles Brian James, Bokos & Plakas, P.C., Westland, Mich., for City of Westland and Southgate.
Mark Van Putten, Nat. Wildlife Federation, Ann Arbor, Mich.
Daniel Andrews, Cozadd, Shangle, Smith & Stone, P.C., Dearborn, Mich., for Belleville.
William J. DeBiasi, Taylor, Mich., for Brownstown.
Edward Zelenak, Lincoln Park, Mich., for Lincoln Park.
Michael H. Feiler, Feiler, Joelson, Lakind & Rosenberg, P.C., Farmington Hills, Mich., for City of River Rouge.
Eugene A. Goreta, Ecorse, Mich., for Ecorse.
Randall Pentiuk, Pentiuk, Miller & Waterman, P.C., Taylor, Mich., for River-view.
Randy Kalmbach, Look, Kalmbach & Look, P.C., Wyandotte, Mich., for Wyandotte.
Fred R. Disheroon, Sp. Litigation Counsel, U.S. Dept. of Justice, Washington, D.C., Stephen F. Schuesler, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., Sebastian Patti, Office of Regional Counsel, Region V, E.P.A., Chicago, Ill., L. Michael Wicks, Peter Caplan, Asst. U.S. Atty., Chief, Civ. Div., Office of the U.S. Atty., Detroit, Mich., and Frank J. Kelley, Atty. Gen., and John C. Scherbarth, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for the U.S. and State of Mich.
James A. Smith, Bodman, Longley & Dahling, John P. Williams, Butzel, Long, Gust, Klein & Van Zile, Philip G. Tannian, Richard E. Hinks, Fildew, Hinks, Gilbride, Miller & Todd, Detroit, Mich., George Kircos, Ford Motor Co. World Headquarters, Dearborn, Mich., Robert H. Fredericks, Chief Deputy Drain Com'rs, Oakland County Drain Com'n, Pontiac, Mich., Avery K. Williams, Cooper, Fink & Zausmer, P.C., William P. Hampton, John M. Donohue, Kohl, Secrete, Wardle, Lynch, Clark & Hampton, P.C., Farmington Hills, Mich., William M. Misterovich, Mt. Clemens, Mich., Darryl F. Alexander, Asst. Corp. *1232 Counsel, City of Detroit Law Dept., Water & Sewerage Div., Tim Howlett, Dickinson, Wright, Moon, Van Dusen & Freeman, Karl R. Bennett, Jr., Stringari, Fritz, Kreger, Ahearn, Bennett & Hunsinger, P.C., Detroit, Mich., Peter J. Kelley, Kelley & Cramer, P.C., Ann Arbor, Mich., and Antoinette R. Raheem, Joseph M. Polito and Beth Gotthelf, Honigman, Miller, Schwartz & Cohn, P.C., Detroit, Mich., for Communities Severed by DWSD Treatment Plant.

OPINION AND ORDER
FEIKENS, District Judge.
Before me are Petitions for Declaratory Relief ("Petitions") filed by Wayne and Oakland Counties ("Counties"). The Counties request that I declare that as a matter of law, they are not the proper National Pollutant Discharge Elimination System ("NPDES") permittees. In the alternative, they request that I declare that the Michigan Department of Natural Resources ("MDNR") issue all NPDES permits jointly to the Counties and the particular municipalities to which they apply.
I held a Show Cause hearing on this matter on December 3, 1991. After careful consideration of all papers filed in response to these petitions and of the arguments raised at that hearing, I find that Wayne and Oakland Counties are entitled to the relief prayed for in their Petitions and therefore DECLARE: (1) that the Counties individually and alone are not the proper NPDES permittees; (2) that joint permits be issued to the Counties and the municipalities to which they apply; and (3) that continuing study and determination shall be given to the concept of a regional consortium or authority and the development of a regional permit and financing structure.

BACKGROUND
Litigation over sanitary, stormwater and combined sewer discharges into the waters of the United States, and of compliance  or lack thereof  with the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("Clean Water Act"), commenced before me in 1977. In the fourteen years since then, we have successfully addressed the problem of dry weather discharges in the Southeastern Michigan region. Now, in the second stage of our efforts, we must address the difficult problem of wet weather discharges and combined sewer overflows ("CSO").
As I held in my Opinion and Order of November 5, 1991, 777 F.Supp. 1365, I continue to have original federal question jurisdiction of consolidated case nos. 77-71100, 87-70992 and 89-72937 pursuant to the NPDES permit standards and enforcement provisions of the Clean Water Act. 33 U.S.C. §§ 1311-1330. At the time dry weather discharge issues were resolved, the parties entered into a consent judgment in case no. 77-71100. That judgment preserved my jurisdiction over wet weather discharge and combined sewer overflow issues to be resolved in the second stage of this case.[1] Therefore, I have jurisdiction over the implementation of wet weather discharge and CSO standards established in proposed NPDES permits "including the time and manner in which the parties must deal with wet weather flow violations."[2] Opinion of December 21, 1989, p. 1.
The Counties' Petitions arise in the context of this long and complex litigation. They draw attention to the sharp conflict between the Clean Water Act's means for eliminating the discharge of pollutants into this nation's waters and the constitutional and statutory limitations placed on the power and authority possessed by counties under Michigan law.

*1233 FACTS
Wayne and Oakland Counties are organized and established pursuant to the constitution and the statutes of the State of Michigan. Under Michigan law, counties possess only those powers expressly delegated to them. The Counties have financed and operate a number of sewage disposal systems. Pursuant to state law, the Counties may and do provide sewage disposal services to their constituent communities pursuant to voluntarily negotiated sewer service contracts. These contracts, in compliance with state laws and constitutional requirements, contain express limitations on the authority of the Counties to levy charges and to construct facilities.
The Clean Water Act requires that a NPDES permit be obtained for any discharge of pollutants from any "point source" into the waters of the United States. 33 U.S.C. § 1311(e). This includes all discharges made from sanitary, stormwater and combined sewer outfalls. NPDES permits are to be issued to the operators of the point source discharge structures.[3] In this case, that would seemingly be the Counties. However, the Counties rightly argue that they have neither the authority to accept NPDES permits on behalf of their constituent communities, nor to comply with the conditions imposed by NPDES permits under either Michigan law or their current sewer services contracts. In addition, the sewage being discharged originates in the constituent communities.
Despite all of this, the State of Michigan through the MDNR, acting as the delegated agent of the United States Environmental Protection Agency ("EPA") pursuant to § 1342 of the Clean Water Act, insists on issuing NPDES permits to the Counties exclusively. MDNR argues that under federal and state regulations the Counties are the proper permittees because they control and operate point source discharge structures.
Wayne County filed its Petition for Declaratory Relief, in which Oakland County concurred, asking me to declare that the Counties are not the proper permittees or in the alternative that the permits be issued jointly to the Counties and the municipalities to which they apply. Oakland County also filed a petition for declaratory relief on its own behalf, asking that I order MDNR to issue the permits to the legal entities in which the discharges originate.

ANALYSIS

1. The Proper NPDES Permittees

The Michigan Constitution provides that a county is a "body corporate with powers and immunities provided by law." Michigan Constitution of 1963, Article VII, §§ 1, 17. Thus, pursuant to state constitutional and statutory law, counties possess only such powers as are expressly conferred on or delegated to them. See, e.g., Bond v. Cowan, 272 Mich. 296, 261 N.W. 331 (1935); Mosier v. Wayne County, 295 Mich. 27, 294 N.W. 85 (1940); Wright v. Bartz, 339 Mich. 55, 62 N.W.2d 458 (1954); Alan v. Wayne County, 388 Mich. 210, 200 N.W.2d 628 (1972).
In the area of the provision of sewage disposal facilities, counties, like other public corporations, are authorized to acquire and finance sewer disposal systems and to furnish such services to users both within and without their jurisdiction. M.C.L.A. § 141.104. However, the Counties have not been given the power to provide, nor to enforce the use of and charge for, sewage disposal services of the kind required by the NPDES permits to the individual users in the local communities. Clearly, the Counties cannot forcibly construct the required facilities under Michigan law. The Michigan Constitution forbids the use by one public corporation of the streets, highways, alleys or other public places of another public corporation for pipes, conduits or other utility facilities without proper consent. Michigan Constitution of 1963, Article VII, § 29. Similarly, *1234 while state law authorizes public corporations to acquire and finance sewer disposal systems and to furnish such services to other corporations, it also provides that "the exercise by any public corporation of such powers outside its corporate limits shall be subject to the legal rights of the political subdivision within which such powers are to be exercised and shall also be subject to any and all constitutional and statutory provisions relating thereto." M.C.L.A. § 141.104.
Thus, it is only with community consent, expressed through voluntary contracts, that the Counties would be capable of constructing any new facilities. However, as a general rule, the current sewer disposal contracts do not permit the counties to construct new facilities nor to recover the costs of permit-required construction through rate increases. Similarly under state law, neither the Counties, nor the State, nor any political subdivision or other entity thereof, may impose any indebtedness on the municipalities involved without their consent. The Counties lack any authority whatever to raise funds independently to meet the burden imposed by the permits, or to compel the communities served by them to contribute their rightful share of such costs. In sum, the Counties have no source of funding to finance the planning and construction, nor any other activity necessitated by either the short- or long-term requirements of the NPDES permits. The Counties have no existing statutory or contractual authority in effect allowing them to impose revenue generating systems in the form of rates, charges, levies or fees from which to pay for the costs associated with the duties imposed by the NPDES permits. Nor can the Counties without further specific action by the municipalities in the Counties, or by the electors therein, raise the funds to pay the costs to operate and maintain the facilities needed to accomplish the ultimate objectives of the NPDES permits.
Thus, the overall effect of the contractual, statutory and constitutional provisions applicable to the Counties' authority regarding accepting and complying with NPDES permits, as well as the jurisdictional relationships among the municipal corporations involved, is that the construction of new facilities and the creation of indebtedness for that construction can only be accomplished by voluntary agreement.
There is nothing in federal law that requires the Counties to accept responsibility for discharges that by state law are appropriately within the province, jurisdiction and responsibility of local municipalities. Unless and until the State, by statute, or the local communities, by contract pursuant to statute, give the Counties the authority to act in this area they remain powerless.
Given that MDNR seeks to impose conditions in the permits which are clearly beyond the statutory or contractual authority of the Counties, and that the permits are for discharges which originate in the constituent communities, MDNR must look beyond the Counties as operators of the discharge structures and also impose the permit conditions on the local communities responsible for the discharge by naming them as joint permittees. Thus, it is my conclusion that under Michigan law, for each permit at issue the Counties and the communities contributing discharges to the respective outfalls, jointly, are the proper NPDES permittees.
Therefore, I DECLARE that given the legal and contractual limitations imposed upon them, the Counties alone are not the proper NPDES permittees. Thus, I DECLARE that joint permits be issued forthwith, to the Counties and the municipalities to which they apply.[4]

2. Consideration of a Regional Approach

In addition to the resolution of the issue of who the proper NPDES permittees are, the Counties' Petitions, in conjunction with a $46 million federal grant for the Rouge River National Wet Weather Demonstration *1235 Project[5], raise the issue of consideration of a regional approach to resolution of the wet weather discharge and CSO problems that plague the region. There can be no doubt that the CSO problems alone now being addressed by the parties and this court are regional problems and that any effective solution to the overflow problems will involve all of the communities in each drainage or river basin in Southeastern Michigan. Nor can there be any doubt that leaving the parties to negotiate each and every permit and the means by which to comply and finance compliance with such permits has only served to elevate the political and parochial differences among the parties above the common goal of solving the overflow problem.
Given the harsh realities of the size and extent of the wet weather discharge and CSO problems to be addressed in this stage of the litigation, I asked those present at the Show Cause hearing whether it would be desirable to consider a regional permit and finance structure so as to elevate the pollution and sewer control problem above the fray of the political and legal difficulties that have prevented the development of an effective solution. The creation of a regional sewer consortium or authority would allow the parties to address issues of non-point source pollution, the coordination of discharge control measures across political boundaries, uniform financing and any other issue arising in the remedial process. Putting aside the question of how to create a regional authority, the parties uniformly favored further investigation into a regional approach to remedy wet weather discharge and CSO problems.
The approval of federal grant funds for the Rouge River National Wet Weather Demonstration Project favors the development of a regional approach to the remedial efforts in Southeastern Michigan. As pointed out by the Press Release of Congressmen Dingell and Ford, among others, distributed at the December 13, 1991 Press Conference announcing the availability of federal grant money to the region ("Press Release"), such an approach:
1. Allows a comprehensive look at sources of water pollution and impacts on the use and enjoyment of a water resource.
2. Is not restricted to political boundaries.
3. Takes a risk reduction/mass balance approach to pollution control as opposed to independently negotiated permits governing only end of pipe-type controls.

4. Allows for a comprehensive approach to varying regulatory mandates that directly or indirectly impact problems associated with water quality.
5. Allows for understanding multiple pollution problems generated by the same climatic event, i.e. a single rain storm.
Press Release, p. 6 (emphasis added).
Consideration of a regional approach to these problems is also supported by the complexity and size of the project. The Rouge River Basin alone consists of 427 miles of watershed and 125 miles of river channel. It is the home of more than 1.5 million people located in 47 different municipal corporations. The price tag for CSO and stormwater control in the Rouge Basin alone is estimated at a cost of up to $2.5 billion. Press Release, p. 7. These figures do not even begin to address the problems of CSO problems in other basins within the Southeastern Michigan region. Certainly, geographic magnitude and the regional nature of the remedial task facing us support *1236 the development of a regional sewer authority or consortium beginning with all entities in the Rouge River Basin.
In addition, the creation of a regional authority is supported, in general, by Congress' new focus on regional solutions to these sorts of pollution problems. For example, a distinct preference for "the use of system-wide permit applications and permits, wherever possible, in lieu of applications, forms and permits for individual combined sewer overflow outfalls," as well as "system-wide stormwater management programs," is expressed in the proposed Combined Sewer Overflow Control Act, H.R. 3477. See, e.g., §§ 3(6)(E) and 3(7)(B)(III).
Therefore, I DECLARE that continuing study and determination be given to the concept of a regional consortium or authority to which MDNR will issue NPDES permits, and that steps be taken following receipt of the data requested by this court in the context of the five factual questions distributed at the Show Cause hearing, to implement a regional permit and financing structure.

CONCLUSION
For the foregoing reasons, I find that Wayne and Oakland Counties are entitled to the declaratory relief prayed for. Therefore, the Counties' Petitions for Declaratory Relief are GRANTED.
IT IS SO ORDERED.
NOTES
[1] This is in accord with the proposed Combined Sewer Overflow Control Act, H.R. 3477, which would amend the Clean Water Act to explicitly regulate combined sewer overflows.
[2] As I pointed out in my November 5, 1991 opinion, to the extent that the issues presented by Wayne County's motion impact on or affect the time and manner in which Detroit and the communities it serves must meet the goal of secondary treatment of wet weather flows, I have jurisdiction over these issues, as this goal remains a part of the original 1977 case.
[3] In this way, the NPDES permits may be inadequate for remedying this region's wet weather discharge and CSO problems because they do not and are not able to address non-point source or stormwater contributions.
[4] For example, the Acacia Park discharge permit should be issued jointly to Oakland County, and the Village of Beverly Hills and City of Birmingham.
[5] "$46,000,000 shall be available for Rouge River National Wet Weather Demonstration Project grants to be awarded by the Administrator, who is authorized to make such grants to Wayne County, Michigan, such grants to be for the construction of sanitary sewers and retention basins, for the repair and maintenance of wastewater treatment plants and collection systems, and for the investigation of commercial and industrial facilities and storm sewer connections to implement the Rouge River National Demonstration Project for Wet Weather Flows...." Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriation Act of 1992, Pub.L. No. 102-139, 105 Stat. 736, 764 (1991). The availability of this grant money for the demonstration project in the Rouge River Basin region was announced by Congressmen John Dingell and William Ford, among others, at a Press Conference held in Dearborn, Michigan, on December 13, 1991.